Mrs. Hollie LEE et al., Appellants,

v.

HOWARD BROADCASTING CORPORA-
TION, Appellee.

No. 13145.

Court of Civil Appeals of Texas.

Houston.

Sept. 12, 1957.

Rehearing Denied Oct. 10, 1957.

———◆———

Liddell, Austin, Dawson & Huggins; W. O. Huggins, Jr., Charles R. Vickery, Jr., and Alexander T. Sidman, Houston, for appellants.

Fulbright, Crooker, Freeman, Bates & Jaworski and Austin C. Wilson, Houston, for appellee.

GANNON, Chief Justice.

Mrs. Hollie Lee, the owner of two certain promissory notes made by Howard Broadcasting Corporation and secured by a deed of trust to John C. Dawson, Trustee, covering lands in Harris County, Texas, as well as by a separate chattel mortgage covering certain personal property, appeals from a temporary injunction granted, after notice and hearing, to Howard Broadcasting Corporation, the maker of the notes. John C. Dawson, the trustee, joins in the appeal. Mary Alice Rosenberg and husband, Lester E. Rosenberg, were made parties-defendant, but they disclaimed and are no longer interested.

By the order appealed from the appellants are restrained, pendente lite, from exercising the powers of sale conferred by the deed of trust as well as those granted by the chattel mortgage based on any default relating to the prompt payment of the notes, or either of them. The order expressly excepts from its operation judicial proceedings to collect the notes. It required a $6,000 injunction bond.

Prior to the allowance of the temporary injunction, there was a hearing at which some testimonial and documentary evidence was introduced. However it is evident to us that the order was granted largely, if not entirely, on facts appearing from the sworn pleadings of the parties. These consisted of an original and a supplemental petition of plaintiff Howard Broadcasting Corporation, both verified on personal knowledge, and a sworn answer of the defendants Mrs. Hollie Lee and John C. Dawson, the trustee, denying the material allegations of the original petition.

Certain undisputed facts appear from the sworn pleadings. Those deemed material are:

On or about January 15, 1954, Howard Broadcasting Corporation executed and delivered to the respective payees thereof two certain promissory notes, one in the principal sum of $100,000 payable to the order of Mrs. Hollie Lee, the other in the principal sum of $85,000 payable to the order of Mary Alice Rosenberg and Lester E. Rosenberg. The notes provide for interest on principal from date until maturity at the rate of 4% per annum, payable semi-annually as it accrues, in the case of Mrs. Lee's note on March 1 and September 1 of each year, and in the case of the Rosenberg note on the 15th of July and the 15th of January of each year. The principal of each of the notes is payable in annual installments, the installments on the Lee note being due March 1 of each year commencing in 1954, and the installments on the Rosenberg note being due January 15 of each year commencing in 1955. The installments on the Lee note, in the order in which they accrue, are as follows: $15,000, $15,000, $15,000, $17,500, $17,500, $20,000. The installments on the Rosenberg note, in the order in which they accrue, are: $15,000, $15,000, $15,000, $17,500, $17,500, $5,000. Each of the notes provides for interest at 10% per annum on all past due principal and interest. The parties refer to this as "penalty" interest. Each of the notes provides if any installment either of principal or interest *on either of the notes* be not paid at maturity, that upon continuance of any such default for sixty days all unpaid principal and interest of both

notes shall immediately mature and become payable. Each of the notes provides for the payment of 10% additional on the amount then due if placed with an attorney for collection or if suit is brought on same. Each of the notes is secured by the vendor's lien on 42.40 acres of land in the E. E. Reed Subdivision, W. C. R. R. Company Survey, Harris County, as well as by a deed of trust dated January 15, 1954, to John C. Dawson, Trustee, covering said land, and also by a chattel mortgage dated January 15, 1954, covering certain personal property located in Harris County. The deed of trust and chattel mortgage each contain provisions for extra-judicial sale. Each of the notes carries the usual clause stipulating waiver of demand, etc. The notes were given by Howard Broadcasting Corporation in connection with its purchase of Radio Station K L B S. The station's broadcasting tower is located on the land covered by the deed of trust, and the chattel mortgage covers personal property necessary and useful in the operation of said radio station.

A provision in each of the notes for automatic acceleration is, when viewed alone, clear and unambiguous. That contained in the Lee note reads as follows:

"If any installment of this note, either of principal or interest, is not paid at its maturity, or if any such installment falling due on that certain promissory note bearing even date herewith, executed by the Maker hereof to Mary Alice Rosenberg and Lester E. Rosenberg in the principal sum of Eighty-Five Thousand Dollars ($85,-000.00), is not paid when due, and if any such default continues for as long as sixty (60) days, then the entire balance remaining unpaid hereon, and all accrued but unpaid interest, if any, shall immediately mature and become due and payable."

That contained in the Rosenberg note is precisely similar except that where in the Lee note the Rosenberg note is referred to, in the Rosenberg note the Lee note is referrred to. However, despite the unambiguous provision for automatic accel-

eration and maturity appearing in each of the notes, the contemporaneously executed security instruments each and both provide for acceleration of maturity upon default in payment of the debt, whether of principal or interest, *at the option of the holder*. The deed of trust provides:

"Now, should the said indebtedness, both principal and interest, be promptly paid as the same shall become due and payable * * *, then this conveyance shall become null and of no further force and effect, and shall be released at the cost and expense of the Mortgagors. But if default is made in the punctual payment of said indebtedness, or any part thereof, principal or interest, as the same shall become due and payable * * *, then * * * the whole amount of any such indebtedness remaining unpaid, shall, *at the option* of any holder or holders thereof (or any part thereof) immediately mature and become payable; * * *." (Emphasis supplied.)

The chattel mortgage provides:

"If default is made in the payment, when due, of the above described indebtedness or any extension, renewal or rearrangement of the same, * * *, then and upon the happening of any such event, Mortagees may *at their election* declare and thereby cause the full principal amount of the indebtedness remaining unpaid and all accrued but unpaid interest thereon to be immediately due and payable; * * *." (Emphasis supplied.)

In view of the conflicting and contradictory provisions respecting acceleration appearing in the contemporaneously executed instruments constituting a single integral transaction, a patent ambiguity emerges with respect to the intent of the parties in regard to acceleration of maturity of the debt, i. e., whether automatic or optional at the election of the holder of the notes.

Apparently, prior to January 15, 1956, all principal and interest due on the Rosenberg note had been paid. On that date

there matured a $1,400 interest payment and a principal installment of $15,000. In respect to the installment of principal and interest on the Rosenberg note, falling due January 15, 1956, it is undisputed that only the following payments were made: March 2, 1956, $5,000; March 9, 1956, $1,400; March 14, 1956, $5,000. Apparently, as of March 1, 1956, all matured principal and interest on the Lee note had been paid, however subsequent to that date only the following payments were made in respect to the principal and interest on the Lee note: April 30, 1956, $1,000; May 30, 1956, $1,000; June 20, 1956, $1,000; June 28, 1956, $1,000; July 12, 1956, $2,000.

Mrs. Lee acquired the Rosenberg note in late 1956. The petition, however, alleges that when the 1956 accruals on the notes came due the ownership thereof was in Mrs. Lee and Mrs. Rosenberg, respectively, and that each and both waived prompt payment of the notes and agreed to accept payments from time to time as Howard Broadcasting Corporation was able to make them, agreeing that late payment should not be made a basis for acceleration of maturity of the unpaid installments of principal or interest thereon. However, we find it unnecessary to determine the sufficiency of these allegations which we consider to be vague and indefinite. They are obviously insufficient to establish a rearrangement of the contract, and we think are insufficient to show estoppel or waiver beyond the times hereinafter indicated in any event.

On *August 21, 1956,* Mrs. Lee notified Howard Broadcasting Corporation that her note had been *declared* to be in default and the entire balance had been matured and declared due "because of default and failure to pay the installment of $15,000.00 due on said note on *March 1, 1956.*" (Emphasis supplied.) Having in mind the patent ambiguity in respect to the provisions for acceleration appearing on the face of the loan papers, we note that as of February 11, 1957, the date of the filing of her sworn answer, in and by that instru-

ment Mrs. Lee claimed that there was due on the Lee note the sum of $68,030.11 "together with interest thereon at the rate of 10% per annum from August 22, 1956, until paid." August 22, 1956, was the day following Mrs. Lee's written notice to Howard Broadcasting Corporation that the maturity of the unpaid principal and interest on her note had been declared accelerated. Also in her answer Mrs. Lee, having at that time acquired ownership of the Rosenberg note, claimed that there was then due on the latter the sum of $62,877.-46 "together with interest thereon at the rate of 10% per annum from *December 11, 1956,* until paid." (Emphasis supplied.) It appears that the Rosenbergs on or about December 10, 1956, notified Howard Broadcasting Corporation that their note had been *declared* to be in default and the entire balance of the note had been matured and *declared* due because of the default in the *prompt* and full payment of the installment of $15,000 due January 15, 1956.

It is crystal clear from her sworn answer that Mrs. Lee—at the time of the filing thereof, at least—attached substantial significance to the dates August 22, 1956, and December 11, 1956. These dates respectively are one day following the notices to Howard Broadcasting Corporation of the declaration of acceleration of maturity of the Lee and Rosenberg notes.

The sworn claim of Howard Broadcasting Corporation in its petition is that the notes were not to be *automatically* accelerated in any event but that the real contract of the parties was that acceleration for default in prompt payment was to be *at the option or election* of the holder only. Mrs. Lee's sworn answer lends weight to this contention since apparently by that instrument she fixes August 22, 1956, and December 11, 1956, as the dates for the commencement of the running of penalty interest of 10% on the notes respectively. These dates, we have pointed out, are in each instance one day following express notice of declared acceleration. Despite

the allegations of her answer claiming penalty interest from August 22, 1956, and December 11, 1956, respectively, it is the claim of Mrs. Lee in this Court, supported by elaborate tables in her brief, that both notes were accelerated in their entirety by default in the payment of the January 15, 1956, installment on the Rosenberg note continuing for sixty days, that is to say, through March 15, 1956, and it is Mrs. Lee's claim before us, and presumably also *as of the time of the hearing in the trial court as distinguished from the time of the filing of her answer,* that the sale was to satisfy a debt arrived at on the basis of automatic acceleration of both notes by reason of sixty days continuous default in the payment of the January 15, 1956, installment on the Rosenberg note.

While not expressly alleged, the detail of the attorneys' handling of the notes after they were placed in their hands for collection is reasonably clear. Letters were written by the lawyers demanding payment. Apparently there were some conferences in regard to collection of the debt, and upon refusal of Howard Broadcasting Corporation to pay the indebtedness in the full amount as claimed by Mrs. Lee, the lawyers called on the trustee to post notices of sale. These presumably were prepared by the lawyers, but for technical reasons proved fatally defective on their face. The application for injunction followed. It is inferable that the attorneys have done nothing else to collect the debt save to attempt to defeat the issuance of the temporary injunction appealed from. They filed no cross-action seeking to reduce the notes to judgment.

Before the hearing on temporary injunction, Howard Broadcasting Corporation on March 1, 1957, paid Mrs. Lee on account of the amounts due on both notes the sum of $127,554.27, claiming this to be the full amount then due. It was the claim of Mrs. Lee in this Court, and presumably as of the time of hearing in the trial court, that by treating both notes as fully matured as of March 16, 1956, there was due as of

March 1, 1957, on account of principal and interest, including penalty interest, the sum of $135,625.57 as well as an additional sum of $13,090.75 representing attorneys' fees, or a grand total of $148,716.32. The difference between the payment and Mrs. Lee's claim as of March 1, 1957, is $21,162.- 05. In connection with its supplemental petition and after the $127,554.27 payment above referred to and in addition thereto, Howard Broadcasting Corporation paid into the registry of the court the sum of $21,179.05, calculated by it to be the difference between the amount claimed by Mrs. Lee as due on the notes and its payment to her of $127,554.27. In its supplemental petition Howard Broadcasting Corporation asked the court to ascertain what if any additional sums might be due Mrs. Lee and award her the same out of its cash tender, the balance to be returned to it.

In this Court the principal contention of the appellants is evidenced by their Point Three, reading as follows:

"The Trial Court erred and abused its discretion by enjoining Appellant from exercising the power of sale in her deed of trust and chattel mortgage securing the "Rosenberg note" and the "Lee Note", because the undisputed evidence established (1) the legality of Appellant's demand, (2) acceleration of maturity of the notes on March 16, 1956, and (3) Appellant's right to 10% interest after maturity and a 10% attorney's fee.

"We overrule this contention."

In 37 Amer.Jur., Mortgages, Sections 731 and 734, p. 158 et seq., it is said:

"An injunction is a proper remedy where a mortgagee exercises his power of sale by attempting to sell to satisfy an amount largely in excess of the actual debt. * *.

"The theory in issuing such an injunction is that the power of sale should not be permitted to be used as an instrument of oppression. * * *

"It is the general rule that to entitle him to an *injunction on the ground that the* mortgagee's claim is excessive, the mortgagor must have tendered the amount which he admits to be due or must offer in his bill to pay it. * * * Even where the mortgagor is required to bring into court the amount due, he will be required to bring the amount which the court thinks is due, and not the amount sworn to by the mortgagee. * * *"

Section 132, Mortgages, 29 Tex.Jur., p. 966 et seq., reads:

"In accordance with general principles which are set forth elsewhere, the writ of injunction may be issued to restrain the selling of the mortgaged property. * * * While a sale of the property may properly be stayed until there has been a determination of the sum which is due the mortgagee, it seems that, as a condition to the securing of relief, the mortgagor must tender the amount which he concedes to be due."

A subsidiary contention of appellants is that a sworn denial of the allegations of a sworn petition for temporary injunction destroys the equities of the bill unless re-established, as it were, by testimonial or documentary evidence. Crouch v. Crouch, Tex.Civ.App. Waco, 164 S.W.2d 35, contains dicta, which, when taken out of context, would appear to lend support to this contention. But the same court eleven years earlier, in Fort v. Moore, Tex.Civ. App., 33 S.W.2d 807, 808, stated: "Our courts hold that, although the defendant does deny under oath all the allegations contained in an application for temporary injunction, it is still within the discretion of the trial court to grant a temporary injunction pending a final hearing on the merits of the case." Yonack v. Emery, Tex.Civ. App. Dallas, 4 S.W.2d 293, was cited by the Waco Court and quoted as follows: " 'But, even if the answer could be construed as a specific denial of the equities of the bill, appellants were not, as a matter of right, entitled to have the injunction dissolved. The question of preserving the status of

the litigation until final trial would still rest in the sound discretion of the court.' "

The inconclusive state of the Texas authorities probably accounts for the following somewhat ambiguous text: 24–A Tex. Jur., Injunctions, Sec. 140, page 231—

" § 140. —Conclusiveness of Verified Pleadings and Affidavits.—If the defendant files a responsive and specific verified answer, a verified petition which is unsupported by affidavits or other proofs is overcome, and a temporary injunction may be denied, especially if a lack of equity in favor of the petitioner appears, or, it seems, if the verification is inherently unconvincing.

"However, a sworn answer to the petition or application for a temporary writ does not, it seems, preclude the court from granting the writ pendente lite to preserve the status quo without hearing evidence, if the denials in the answer do not meet all of the allegations of the petition. Even though an answer under oath denies the allegations of the petition or application for a temporary writ, the court in its discretion may allow the writ pending a final hearing on the merits."

■■■ It is clear from the authorities and the rules that in hearings on applications for temporary injunction ex parte affidavits are admissible and that "a verified petition and a responsive sworn answer thereto are to be taken together *as evidence* on a hearing for a temporary injunction." 24–A Tex.Jur., Injunctions, Section 138, p. 228. Rule 385(d), Texas Rules of Civil Procedure. (Emphasis supplied.) We have no doubt of the right of a trial court under proper circumstances to decide fact issues on application for temporary injunction on the basis of sworn pleadings considered as affidavits—each case to stand on its own bottom

■■■ A legal principle of which we take notice is that in construing ambiguous written instruments, the practical construction put upon them by the parties in oper-

ating under them is of great weight. Citation of authority in support of this axiom is thought unnecessary. Also, we note that a contract for attorney's fees is in the nature of a contract for indemnity against liability therefor, actualy incurred in contracting for reasonable fees, and that while stipulated attorney's fees are *prima facie* reasonable facts and circumstances in particular instances may demonstrate stipulated fees to be excessive. An additional principle which is well established is that the trier of the facts is not bound by formal evidence on attorney's fees where an issue of their reasonableness is involved. Southland Life Ins. Co. v. Norton, Tex. Com.App., 5 S.W.2d 767; Gulf Paving Co. v. Lofstedt, 144 Tex. 17, 188 S.W.2d 155, 160. In the Gulf Paving Company case the court declared the rule to be that in determining the reasonable value of an attorney's services "the jury may take into consideration the facts before them *in relation to the services rendered*, as well as the estimates of their value made by attorneys who testified." (Emphasis supplied.) In the same case the court quoted with approval from Head v. Hargrave, 105 U.S. 45, 26 L.Ed. 1028, establishing the rule that it is in the province of the finder of the facts in determining the reasonableness of attorney's fees to consider not alone the testimony of experts as to their value, but to weigh such reasonableness in relation as well "to their nature, the time occupied in their performance, and other attending circumstances, *and by applying to it their own experience and knowledge of the character of such services.'*" (Emphasis supplied.)

■ It appears from the pleadings and appellants' brief in this Court that unless restrained Mrs. Lee and the trustee propose to proceed with extra-judicial sales under the security instruments to satisfy a claim of debt which includes an amount calculated on the assumption of 10% penalty interest commencing to run by reason of automatic acceleration on March 16, 1956, in the case of both notes in respect to all principal and interest, and not as indicated in Mrs.

Lee's sworn answer in respect to the Lee note on August 22, 1956, and in respect to the Rosenberg note on December 11, 1956. The trial court was fully justified in finding that a sale to satisfy the debt calculated on such assumption might be inequitable and should require preservation of the status quo, as there was a showing on the pleadings of a reasonable probability that plaintiff may succeed on final hearing in establishing that the actual contract was only for acceleration at the option of the holder of the notes, so that penalty interest in respect to much of the principal would not commence to run until a much later date. Plaintiff's contention in this respect is inferentially corroborated by the allegations of Mrs. Lee's sworn answer which point up and claim the dates August 22, 1956, and December 11, 1956, respectively, as those on which penalty interest commenced to run. Mrs. Lee's answer is evidence of a practical construction put on an ambiguous contract by Mrs. Lee herself in proceeding under it, and such evidence squares with the contention of the plaintiff.

The abuse of discretion for which we are asked to reverse is succinctly stated in appellants' brief, as follows: "The Trial Court failed to recognize that the *undisputed facts automatically accelerated maturity* and entitled Appellant to interest at the rate of 10% from March 16, 1956. Such failure to recognize the effect of undisputed facts is an abuse of discretion." In view of the ambiguity in the contract and the contents of Mrs. Lee's answer, we do not think this contention supportable.

Additionally-included in the amount for which defendants propose to exercise the powers of sale contained in the instruments, is a claim of a full 10% as attorney's fees, namely the sum of $13,090.-75. This amount was alleged by plaintiff to be excessive and unreasonably large, all the facts considered. We are clear that on facts expressly and impliedly appearing from the sworn pleadings the trial court was well within his rights as a fact

finder in determining, as he may have, the existence of probability that on final trial a court or jury would fix the attorney's fees in an amount substantially less than the figure insisted upon by appellants.

In short, we are convinced that on at least two issues, namely (1) the actual amount, exclusive of attorney's fees, due on account of principal and interest, and (2) the reasonableness of the attorney's fees claimed, the contents of the sworn pleadings support the implied findings of reasonable probability that on the final trial the plaintiff will be successful in establishing one or both of its contentions. Mrs. Lee insists on her debt and attorney's fees as calculated and claimed by her. Though she may eventually be successful in establishing these claims, still in view of the probable equities of the plaintiff we think under all the circumstances disclosed by this record the matter of preserving the status quo was clearly discretionary with the trial court and that no abuse of that discretion has been demonstrated.

■ By an additional point of error it is claimed the trial court erred in failing to require appellee to post a bond in the amount of appellants' claimed debt plus a reasonable amount to cover interest and costs, as required by the provisions of Rule 684, T.R.C.P. The rule reads in part as follows: "If the injunction be applied for to restrain * * * the collection of a debt, the bond shall be fixed in the amount of such * * * debt, plus a reasonable amount to cover interest and costs." The purpose of the rule, we believe, was to carry forward in letter and spirit, with a modification not here material, art. 4648, R.S.1925. Article 4648 has been carried forward in the statutes through two revisions, and now lastly into the court rules. Its meaning in the rules is therefore to be construed in the funding bond required by Article 3008 of light of the construction given it by the courts as well as that given a similar statute—old Article 3008 of the 1895 statutes, Vernon's Ann.Civ.St. art. 4659. The re-

the 1895 statutes was held in Hicks v. Murphy, Tex.Civ.App., 151 S.W. 845, to be inapplicable to a temporary injunction restraining the sale of lands under a deed of trust, such relief being held not to constitute restraint against collection of a debt; restraint of collection by suit only being held to be the intent of the statute. In Manes v. Bletsch, 1922, Tex.Civ.App., 239 S.W. 307, 309, it was claimed that a temporary injunction restraining a sale under a deed of trust securing the payment of certain notes was void because the court failed to fix the bond in double the amount of the debt, but the court said: "The injunction applied for and granted in this case did not seek to restrain * * * the collection of the debt, and therefore the portion of the article above quoted does not apply. * * * The only relief that he [appellee] sought was to *postpone the sale of the property under the trust deed.* Hicks v. Murphy, Tex.Civ.App., 151 S.W. 845." (Emphasis supplied.) See also Pacheco v. Allala, Tex.Civ.App., 261 S.W. 148. The order appealed from was careful to avoid placing any restraint upon defendant attempting to collect her debt by judicial procedure, including such ex parte processes as attachment, garnishment, sequestration, etc. We do not think Rule 684 has application.

■ This being an appeal in equity, we would not hesitate to require a somewhat larger bond than that fixed by the trial court if we saw any reasonable probability that such was necessary to insure the collection of whatever debt Mrs. Lee may finally establish as due her; however, in view of the payment into court in cash by plaintiff of an amount somewhat in excess of that which Mrs. Lee appears to claim and of the requirement by the trial court of a $6,000 injunction bond, and in view of the further and important fact that when the issue of the amount actually due Mrs. Lee by Howard Broadcasting Corporation is finally determined by the declaratory judgment prayed for by appellee Mrs. Lee may have recourse to the

mortgaged property to realize her claims, we are unable to envision any real possibility that whatever may be finally determined to be due will not be fully collected. The mortgaged property is alleged in the sworn complaint to have a value in excess of $500,000 and there has not been brought to our attention, nor has our own study of the record disclosed, any denial of this valuation.

Under all the circumstances of this record, we feel it was the clear duty of the trial court to preserve the status quo as he did, and that had he failed to grant the injunction as requested there would have been grave danger, in the legal sense, of the powers of sale granted by the security papers being used as "instruments of oppression".

Affirmed.

WOODRUFF, J., not sitting.