**JUSTICE MORTGAGE INVESTORS et al., Appellants,**

v.

**C. B. THOMPSON CONSTRUCTION COMPANY et al., Appellees.**

No. 8626.

Court of Civil Appeals of Texas, Amarillo.

Feb. 17, 1976.

Rehearing Denied March 8, 1976.

Locke, Purnell, Boren, Laney & Neely (Larry M. Lesh), Dallas, for appellants.

Brock, Waters & Galey (Charles E. Galey), Bill D. Tucker, Griffith & Brister (Bill H. Brister), Lubbock, for appellees.

## ON MOTIONS FOR REHEARING

REYNOLDS, Justice.

Our previous opinion is withdrawn, the judgment is set aside and this opinion, issued in response to the motions for rehearing filed by the parties, with the resulting judgment are substituted.

We remain convinced that, in this appeal from the granting of a temporary injunction restraining the trustee's sale under a foreclosure of a deed of trust lien and a security interest, the record fails to show the probable injury necessary for a status quo temporary injunction. Reversed and injunction dissolved.

Flagg Homes, Inc., whose name has been changed to Old Glory Corporation, began negotiations in 1971 with C. B. Thompson Construction Company for the construction of the Hilton Inn Hotel on Flagg's property in Lubbock, Texas. No written construction contract ever was executed; however, Flagg and Thompson agreed that Thompson was to undertake the construction for its cost plus five per cent.

Flagg sought a loan from Justice Mortgage Investors to finance the construction. Justice required Flagg to secure Thompson's written commitment that, in the event of Flagg's default and Justice's request, Thompson would complete construction for Justice's benefit. Flagg executed its 13 February 1973 promissory note in the principal sum of $2,250,000, bearing interest payable monthly, and providing that if the note is not sold pursuant to the conditions stated therein and is held by Justice on 10 January 1976, all principal and accrued interest shall, at the option of the holder, become due and payable immediately. A provision in the note is that the failure to pay any part of the principal or interest when due shall give the holder the option to declare all unpaid principal and accrued interest immediately due and to foreclose all liens and security interests securing payment of the note.

As security for the loan, Flagg executed a deed of trust into which was incorporated a security agreement, conveying its real property in trust to H. M. Kearby, trustee, to secure payment of the note, together with a financing statement covering personalty then or thereafter on or to be attached to the land and improvements. The deed of trust recites that it secures payment of renewals of and increases in the amount of the note. The instrument also contains the standard provisions for Justice's optional acceleration of the maturity of the note if Flagg defaults in any payment or part thereof, and for the sale proceeds to be applied to pay the expenses incident to the sale and the sum due under the note with the remainder, if any, to be paid to Flagg or such other person(s) entitled thereto by law. The deed of trust and financing statement were filed with the Lubbock County clerk on 26 February 1973 and two days later the financing statement was filed with the Secretary of State.

In late February of 1973, Thompson moved a tool shed on the property and did some preliminary staking. It was not, in C. B. Thompson's words, "a big deal," and he "didn't really feel like charging him [Flagg] for it." The first construction labor for which Flagg was billed was performed 13 April 1973 according to C. B. Thompson, who characterized it as a "feeble start" and, because of delay in steel delivery, Thompson was not going "full blast" until July or August.

Flagg drew monthly on the amount borrowed from Justice. After Justice had advanced approximately one million dollars of the loan, Flagg executed as a renewal of, a

substitution for and an increase in its loan another promissory note on 5 November 1973. This note, containing the same optional acceleration and foreclosure clause, is in the principal sum of $2,550,000, bearing interest payable monthly, and is made payable to the order of Justice on demand or, if no demand is made, on 10 January 1976. The note, as well as a renewal and extension agreement executed by Flagg and Justice, recite that the payment of the note is secured by Flagg's 13 February 1973 deed of trust.

Flagg paid Thompson's billings for work performed and materials used through October of 1974, but made no payment for work or materials thereafter. In October of 1974, when Justice had advanced $2,436,-000 of the loan, Flagg ceased making interest payments. Construction was completed, except for the cocktail lounge for which an estimated $30,000 to $40,000 would be required to finish, and possession was delivered to Flagg in December of 1974.

On 27 February 1975, Thompson and C & L Mechanical, Inc., a subcontractor on the hotel construction, each had recorded in the mechanic's lien records of Lubbock County an affidavit to perfect their mechanic's and materialman's liens for labor and materials furnished in the construction in the respective amounts of $367,290 and $35,659.56, the latter amount having been reduced by Thompson's payments to $6,000 at the date of the hearing. Mechanic's and materialman's lien affidavits were subsequently filed through 2 June 1975 by other suppliers of labor and materials.

Because of Flagg's failure to make the designated interest payments, Justice declared the entire loan due and caused notices of trustee's sales in May and June to be posted, but Justice voluntarily refrained from holding these sales. On 3 June 1975, H. M. Kearby, trustee, posted notice that the hotel property would be sold on the following July 1 in accordance with the provisions of the 13 February 1973 deed of trust and security interest.

Thompson filed suit on 25 June 1975 naming Justice, Kearby and Flagg (Kenneth P. Flagg individually, Flagg Homes, Inc., and Old Glory Corporation) as defendants. Thompson's suit sought judgment against Flagg for the unpaid balance of labor and materials furnished for the construction, the establishment of its constitutional and statutory liens superior to those claimed by Justice, the foreclosure of those liens, and a temporary restraining order and a temporary injunction preventing the trustee's sale pending a final hearing. On the same date, the trial court entered its order temporarily restraining the trustee's sale.

C & L intervened, seeking recovery of the unpaid amount of its construction labor and materials from Thompson and Flagg, the establishment of its constitutional and statutory liens superior to Thompson's and the claims of Justice, and the foreclosure of its liens. Kenneth Flagg and Old Glory answered, excepting to Thompson's petition on the ground that it failed to state a cause of action and denying the allegations. Justice and Kearby filed a general denial and thereafter amended to specifically deny the superiority of Thompson's and C & L's liens and the right to a temporary injunction, and to assert the priority of Justice's deed of trust lien and security interest.

Justice calculated that on June 30 Flagg was delinquent in interest payments in the amount of $305,925.19 and on 2 July 1975, Kearby posted notice of sale for 5 August 1975. The notice proposed the sale of the realty and improvements, including all equipment, fixtures and articles of personal property, which embraced everything upon which Thompson and C & L asserted superior liens. The court ordered its temporary restraining order continued until the hearing on the application for temporary injunction.

Although neither Flagg nor C & L had pleaded for injunctive relief, both joined with Thompson at the 1 August 1975 hearing seeking the injunction. During the

hearing, it was shown that the hotel property, into which Flagg had invested about $500,000 of its own money, was the only substantial asset owned by Flagg, and that the hotel is a profitable operation with an appraised value of $4,275,000. The appraised value of the premises is more than the existing claims against the property, but there is no testimony of the sum it likely will sell for at foreclosure sale. C. B. Thompson enumerated items his corporation had supplied for and incorporated into the construction of the hotel which could be removed without material injury to the land or to the structure or to the items themselves. C. B. Thompson was of the opinion that there was no way he could collect from Flagg and, because it would be "virtually impossible for me to remove these items and even come close to recovering the money that is due me," a foreclosure by Justice "would wipe me out," and that he had a much better chance of being paid with Flagg in control of the operation. Further, the testimony revealed that Thompson had delivered certain lounge light fixtures and dimmer panels which remain crated on and unattached to the premises. It was stipulated that the materials furnished by C & L for incorporation into the building could be removed without material injury to the realty, to the structure or to the items. There was testimony that Flagg was attempting to sell, and that there was a prospect of selling, the property at a price more than sufficient to satisfy all claims.

Following the hearing, the court, reciting a finding of some evidence establishing "plaintiffs'" probable right of recovery and irreparable injury unless the status quo is maintained, ordered a writ of temporary injunction issued restraining and enjoining Justice and its trustee from proceeding with the foreclosure sale during the pendency of the suit. The court further ordered Flagg to deposit all hotel income in excess of operating expenses into the registry of the court with an accounting, the funds to remain subject to the orders of the court.

■ Justice has appealed. The ultimate question is whether the trial court abused its discretion in granting the temporary injunction. A trial court has broad discretion in deciding whether to issue a writ of temporary injunction, and the granting of the writ is not an abuse of that discretion when, as specified in *Transport Co. of Texas v. Robertson Transports, Inc.,* 152 Tex. 551, 261 S.W.2d 549 (1953), the applicant shows a probable right of recovery upon a trial on the merits and a probable injury in the interim if the writ is not issued. The corollary rule is that the issuance of a temporary injunctive writ is not sanctioned if the applicant fails to show either a probable right of recovery, *Camp v. Shannon,* 162 Tex. 515, 348 S.W.2d 517 (1961), or a probable injury. *Armendariz v. Mora,* 526 S.W.2d 542 (Tex.1975). Justice challenges the granting of the temporary injunction on the grounds that neither a probable right of recovery nor a probable injury was shown.

■ At the outset, it is to be noticed that Flagg filed no pleadings and produced no evidence addressed to a defense of either the validity of its debt or Justice's contractual rights of acceleration and foreclosure. Flagg does mention the evidence that Justice used $114,000 of the loan Flagg contracted for to apply on interest, that a portion of the amount Justice claims to be due is penalty interest, and that it was understood it would be January of 1976 before Justice got its money. Flagg then suggests that the equities in the matter and especially the uncertainty of the amount owed Justice is sufficient to enjoin the foreclosure sale on the authority of *Lee v. Howard Broadcasting Corporation,* 305 S.W.2d 629 (Tex.Civ.App.—Houston 1957, no writ). The reliance is misplaced. In *Lee,* the corporation successfully enjoined a foreclosure sale attempted by Lee to satisfy a debt, secured by deed of trust and chattel mortgage, by contesting both the due date and amount of the debt and tendering the full amount Lee claimed was due; here, how-

ever, Flagg does not dispute its delinquency of interest payments nor Justice's right to proceed to foreclosure, and Flagg has neither tendered nor offered to pay the amount it admits is due. In these circumstances, Flagg does not have the right to stop the sale on the ground that a part of its debt is not due. *Corbett v. Sweeney*, 151 S.W. 858 (Tex.Civ.App.—Galveston 1912, writ ref'd).

The initial query, then, is whether Thompson and C & L have shown a probable right of recovery; that is, whether their liens are in any manner superior to Justice's deed of trust lien and security interest. Without reciting the various facets of the contentions which will be answered explicitly or implicitly in determining the issue, suffice it to state that each party claims a superior lien.

Article XVI, § 37, of the Texas Constitution gives every person who labors on or furnishes material for buildings and articles a self-executing lien for the value thereof and specifies that the legislature shall provide by law for the speedy and efficient enforcement of the lien. Pursuant thereto, the legislature has enacted Articles 5452 et seq., as amended.* Insofar as material here, section 1 of art. 5452 attaches the lien, when statutorily perfected, to the building, improvements and fixtures and on the land necessarily connected therewith. The first section of art. 5459 provides for the priority and enforcement of the lien and has been interpreted to mean that this lien is made superior to a prior recorded deed of trust lien on items of improvements which can be removed without material injury to the land and pre-existing improvements or to the items removed, but it is inferior to the previous lien if the removals cannot be made without material injury. *First National Bank in Dallas v. Whirlpool Corporation*, 517 S.W.2d 262, 269 (Tex.1974). Section 2 of art. 5459 establishes the inception of the lien at the occurrence of the earliest of (1) actual commencement of construction or delivery of material to be used in construction to the land if either is actually visible from inspection of the land, or (2) the proper recording of the written agreement, if any, to perform labor or furnish materials, or (3) the proper recording of a sufficient affidavit by the lien claimant of an oral agreement for construction.

■ In consequence of the foregoing and contrary to the contractors' contention, a mechanic's and materialman's lien did not attach when Justice knew Thompson was to be the general contractor and required his assurance of completion before the loan was made; the earliest that the lien could attach was when Thompson actually commenced construction or delivered on the jobsite material to be used in the construction. Our view of the record, supported particularly by C. B. Thompson's testimony and by the majority view of the courts considering the matter as reported in 1 A.L.R.3d 822, is that Thompson's lien had its inception no earlier than the performance of construction labor on 13 April 1973, and not in the preceding February when Thompson moved a tool shed on the property and did some preliminary staking. Thus, Justice's deed of trust lien and financing statement of record in February of 1973 were prior in time and superior except for the items of improvements furnished by Thompson and C & L which can be removed without material injury to the land, to the building and to the items themselves. On these items they are given the superior lien which, as stated in *First National Bank in Dallas v. Whirlpool Corporation, supra*, has "an unqualified preference over any prior liens." 517 S.W.2d 268.

■ This *Whirlpool* holding disposes of Justice's contention that its prior recorded security interest is, even if its deed of trust lien is not, superior to the mechanic's and materialman's liens by virtue of the provi-

* All statutory references are to Vernon's Annotated Texas Revised Civil Statutes.

sions of Chapter 9 of the Texas Business and Commerce Code (1968). Yet, Justice argues that because *Whirlpool* was not concerned with a security interest in deciding the priority between an art. 5459 lien and a prior lien upon land, that case is not authority for the proposition that a mechanic's and materialman's lien attaches in preference to a security interest, but that Chapter 9 establishes the superiority of the security interest. The imperfection in the argument is that there is no Chapter 9 language which addresses competing claims between the holder of a security interest and a mechanic's and materialman's lienholder to property subject to a security interest given by a debtor who afterwards becomes possessed of the property impressed with a constitutionally sanctioned mechanic's and materialman's lien. To interpolate into the Code the meaning contended for by Justice would corrupt the long established principle that mechanic's and materialman's lien laws are liberally construed to protect laborers and materialmen. We do not think that the legislature, in enacting the Code, intended to nullify the preference which it had given in clear and unambiguous terms to mechanic's and materialman's liens. See *Whirlpool, supra,* at 269. Accordingly, the trial court was justified in finding that Thompson and C & L had shown a probable right of recovery.

■ This concurrence normally would render superfluous at this stage of the litigation any comment concerning Thompson's and C & L's declaration that their liens, intervening prior to the 5 November 1973 renewal of and increase in the amount of the loan, were superior to Justice's deed of trust lien on the land and permanent improvements as to the original loan amount of $1,250,000 not then advanced or to the $300,000 increase in the loan. But, because the matter is interrelated with their claim of injury to be later noticed, we observe that they did not demonstrate the superiority declared. Generally, whether the prior deed of trust secures additional indebtedness depends on the intention or contemplation of the parties. Thompson and C & L adduced no evidence to negate the written expressions that the original lien would, and by the renewal and extension agreement did, secure from its inception the renewal of and increase in the amount of the loan. Under the developed facts, we cannot say that the mechanic's and materialman's liens have reached the superiority claimed. See, e. g., *Wood v. Parker Square State Bank,* 400 S.W.2d 898 (Tex.1966); 55 Am.Jur.2d, Mortgages, § 459.

The remaining query is whether Thompson and C & L have shown they will probably suffer injury from the trustee's sale. Obviously, the sale will not, and Thompson and C & L do not pretend that it will, affect the contractual causes of action for debt Thompson has asserted against Flagg and C & L has asserted against Thompson and Flagg, the respective parties liable to the contractors for their labor and materials. Nor will the sale destroy the superior liens the contractors have on the improvements which they establish can be removed without injury, the only tangible security they are entitled to in view of Justice's otherwise superior deed of trust lien and security interest. The contractors' superior liens are enforceable on the removables in the hands of the purchaser who will have, at least, constructive notice of the liens. See *First National Bank in Dallas v. Whirlpool Corporation, supra.*

■ Nevertheless, Thompson argues that in other respects the court's finding of irreparable injury is sustainable by the evidence. Pointing to the notice of sale contents, Thompson says that if Justice sells all of the property for cash, Justice will obtain all of the money for application to its debt to the exclusion of Thompson. Subject, as we have written, to the superior mechanic's and materialman's liens on the removables, Justice's senior deed of trust lien has priority over the mechanic's and materialman's

liens both as to the realty and improvements. *Hammann v. H. J. McMullen & Co.,* 122 Tex. 476, 62 S.W.2d 59 (1933). It follows that Justice has the right to sell its interest in the property and to first claim the proceeds because, notwithstanding the statute, Thompson's lien does not entitle it to have the unseverable improvements sold separately to satisfy its debt, *Cameron County Lumber Co. v. Al & Lloyd Parker, Inc.,* 122 Tex. 487, 62 S.W.2d 63 (1933), nor to have the value of the improvements determined, the property sold and the proceeds prorated. *C. D. Shamburger Lumber Co. v. Holbert,* 34 S.W.2d 614 (Tex.Civ.App. —Amarillo 1931, no writ). However, should the sale generate a sum in excess of the sale expenses and Justice's debt, the excess would not belong to Justice; the terms of the deed of trust specify that the remainder is to be paid to Flagg or the other person(s) entitled to it by law.

■ Additionally, Thompson argues that if Justice or some third party should purchase the property at the trustee's sale, the purchaser would receive possession and purported title, would receive the income from the hotel operation and would, as found by the trial court, use, consume and depreciate the property and, if they desired, would dispose of the removable and unattached items, all to his injury. The brief response is that Thompson has shown no legal right to the income from the hotel operation, and there is no evidence that any purchaser would use, consume, depreciate or dispose of the removable items any different from the daily depreciation said to be occurring under Flagg's ownership. This claim of injury is based on mere surmise or conjecture, neither of which will support an injunction, *Millrights Local Union No. 2484 v. Rust Engineering Co.,* 433 S.W.2d 683 (Tex. 1968); *Haden Employees' Ass'n. v. Lovett,* 122 S.W.2d 230 (Tex.Civ.App.—Galveston 1938, writ ref'd), for mere surmise or conjecture is not any evidence of the fact. *Joske v. Irvine,* 91 Tex. 574, 44 S.W. 1059 (1898).

What has been said about the lack of a showing of injury to Thompson is equally applicable to C & L's general assertion of its injury. Beyond that, C & L failed to show that Thompson is not financially responsible to it.

■ Expanding the argument further, Thompson, joined by C & L and Flagg, collectively assert that Justice is well secured in its loan and has shown no injury flowing from the injunction, while a foreclosure sale would impair the opportunity for the creditors to be paid, and that equity supports the position that all creditors will be best served if foreclosure is prevented and Flagg is allowed to continue operations. To the contrary, it is inequitable to enjoin, even temporarily, Justice's clear right to proceed with the trustee's sale after the applicants failed to make out a prima facie case for a status quo injunction. *Camp v. Shannon, supra.* And an injunction does not lie to temporarily immobilize the exercise of that right just to gain time to pay a due debt, *Rogers Ranch Co., Inc. v. Darwin,* 89 S.W.2d 828 (Tex.Civ.App.—San Antonio 1936, no writ), or because a delay of the sale might allow all creditors to be satisfied. *Commonwealth Bank & Trust Co. v. Mac-Donell,* 49 S.W.2d 525 (Tex.Civ.App.—San Antonio 1932, no writ).

■ In summary, a probable right of recovery on final hearing is shown on the part of Thompson and C & L, but they did not show that in the interim a legal injury probably will result to them unless the trustee's sale is enjoined. The law is clear: an injunction will never be granted unless it appears that the injury will otherwise result to the applicant. *Chisholm v. Adams,* 71 Tex. 678, 10 S.W. 336 (1888). Consequently, the trial court abused its discretion in granting the temporary injunction.

All motions for rehearing are overruled.

The judgment is reversed and the temporary injunction is dissolved.