Patrick McGONAGILL, Appellant,

v.

HIDE–A–WAY LAKE CLUB, INC., Appellee.

No. 1104.

Court of Civil Appeals of Texas, Tyler.

May 11, 1978.

Rehearing Denied June 8, 1978.

Rick Rogers, Texarkana, for appellant.

Samuel M. George, Larry S. Parker, Tyler, for appellee.

McKAY, Justice.

This is an appeal from an interlocutory order denying appellant a temporary injunction. Appellant, Patrick McGonagill, brought suit to enjoin appellee from disconnecting the water supply to appellant's sprinkler system. The trial court granted a temporary restraining order in appellant's favor, but at the subsequent hearing refus-

ed to grant a temporary injunction. It is from this order that appellant perfected his appeal. Appellant alleged that, in relying upon appellee's agent, he purchased pipe to effectuate connection of his sprinkler system with appellee's golf course fairway watering system; that he later installed a water sprinkler system at a cost of $1,500.00; and that he then landscaped his yard at a cost of $8,000.00. It was further alleged that appellee's agent acted with actual or apparent authority and appellee ratified his acts. Appellant prayed for a temporary restraining order, temporary injunction, and permanent injunction to prevent appellee from turning off the water and for $1,000.00 in damages resulting from the loss of his landscaping.

Appellee answered that appellant had never acquired an easement on its property and by general denial. At the hearing on the temporary injunction, the trial court entered the order denying a temporary injunction which is the subject of this appeal.

On or about July 1, 1972, appellant purchased Lot 401 of Unit 13 of the Hide-A-Way Lake, Inc. Subdivision, and simultaneously made application for membership in Hide-A-Way Lake Club. The application for membership and water service agreement, signed by appellant, provided for one three-quarter (¾) inch water service connection to appellant's lot and further stated:

"This agreement contains the entire agreement of the parties to membership in Hide-A-Way Lake Club and water service and charges. It may not be changed orally, but only by an agreement in writing signed by an authorized representative of the corporation."

Another document, entitled "Restrictions, Covenants and Conditions Applicable to Hide-A-Way Lake," on file in the Smith County Deed Records, provides that "the pumping of water from any lakes or ponds is prohibited except by special permit, in writing, granted by Hide-A-Way Lake, Inc."

Appellee, in its corporate form, is the successor of Hide-A-Way Lake Club, an organization comprised of members who were required to be owners of lots in the development. Appellant testified that the water pressure to his house was poor; that he attempted for over a year to get his lawn in shape by using a sprinkler and water hose; and that he could not operate his sprinkler system due to the low water pressure. At this time, Thomas Goode was employed by appellee as golf course superintendent. Appellant testified that he and Goode discussed the water problem. Goode told appellant that his crew would install a water line from the middle of the fifth fairway to appellant's property if appellant would purchase the necessary pipe. Appellant purchased the pipe and some time later Goode's crew installed it.

Concerning his authorization to take such action, Goode testified, "There wasn't any authorization made pro or con. I had authorization to do anything I wanted to as far as I knew." To his knowledge, no other property owner obtained water in this manner.

Harold Fowler was general manager of Hide-A-Way Lake Club, Inc. from October, 1973, to June, 1977. Some time in the fall of 1975, upon being informed by a member of the Board of Directors of Hide-A-Way Lake Club, Inc. that appellant's water sprinkler system was connected with the golf course water system, Fowler ordered the water cut off. When the water was cut off, appellant asked to appear before the next meeting of the Hide-A-Way Lake Club, Inc. Board of Directors. On November 3, 1975, he appeared before the Board, explained the situation and that he was willing to pay up to $700.00 or $800.00 a year for the water. Rather than taking any action at that time, the Board took the matter under advisement.

The minutes of the next Board meeting, on December 30, 1975, reflected that Wayne Griffin of the Board of Directors instructed Fowler to remove the water lines leading to appellant's sprinkler system at his earliest convenience. Although this action was never taken, the water remained cut off. At some point, appellant contacted his present

attorney of record. A letter dated January 8, 1976, from appellant's counsel was later hand delivered to Griffin. In substance, the letter proposed several ways in which to settle the dispute. However, it further stated that, "If none of the proposals are satisfactory, [appellant] would like to file a lawsuit so that this whole mess can be resolved once and for all." Some time later, appellant turned the water on. Fowler testified that he was not aware the water had been turned on. The water remained on until June, 1977, when Earl Horton, the new general manager, ordered Joe Mac-Mahon, golf course superintendent, to disconnect the water. Appellant then filed his petition seeking injunctive relief which the trial court refused to grant.

At the hearing appellant testified that he landscaped the yard for $8,000.00. He also testified that one man had estimated it would cost $1,000.00 to connect his sprinkler system to the three-quarter inch line which provided water to the house. McGonagill further testified that as of the time of the hearing that other homeowners in the neighborhood had sprinkler systems connected to the water line servicing their homes and that the water pressure had been corrected and seemed sufficient.

In his sole point of error, appellant argues that the trial court's refusal to grant a temporary injunction was a clear abuse of discretion because only questions of law were presented, which, based on the undisputed facts, established his rights to an injunction. We disagree.

■■■ It is settled law that the grant or refusal of an injunction is ordinarily within the sound discretion of the trial judge, and on appeal, the review of the trial court's action is limited to the narrow question of whether the action constituted a clear abuse of discretion. *Janus Films, Inc. v. City of Fort Worth,* 163 Tex. 616, 358 S.W.2d 589 (1962); *Repka v. American National Ins. Co.,* 143 Tex. 542, 186 S.W.2d 977 (1945). Absent disputed facts, the action of the trial court is not reviewed as a matter of discretion, but whether the trial court correctly applied the law to the undisputed facts. *General Telephone Co. v. City of Wellington,* 294 S.W.2d 385, 393 (Tex.1956); *Southland Life Ins. Co. v. Egan,* 126 Tex. 160, 86 S.W.2d 722 (1935).

■■■ The sole question on an application for a temporary injunction is petitioner's right to the preservation of the status quo, and to establish such right it is required only to show a probable right and a probable injury. *Watts v. Alto Ind. School District,* 537 S.W.2d 776 (Tex.Civ.App-Tyler 1976, no writ); *Chesterfield Finance Co. v. State,* 331 S.W.2d 368 (Tex.Civ.App.-Waco 1960, writ ref'd). The issuance of a temporary injunctive writ is not sanctioned if the applicant fails to show either a probable right of recovery, *Camp v. Shannon,* 162 Tex. 515, 348 S.W.2d 517 (1961), or a probable injury. *Armendariz v. Mora,* 526 S.W.2d 542 (Tex.1975). An injunction will never be granted unless it appears that injury will otherwise result to the applicant. *Chisholm v. Adams,* 71 Tex. 678, 10 S.W. 336 (1888); *Justice Mortgage Investors v. C. B. Thompson Construction Co.,* 533 S.W.2d 939, 946 (Tex.Civ.App.-Amarillo 1976, writ ref'd n. r. e.). It has also been said that in order to obtain injunctive relief one must prove a probable right to a permanent injunction and a probable injury. *Oilfield Haulers Association v. Railroad Commission,* 381 S.W.2d 183 (Tex.1964). One seeking injunctive relief need only offer evidence tending to prove a probable right to recovery and a probable injury if the injunction is not granted. *Transport Company of Texas v. Robertson Transports, Inc.,* 152 Tex. 551, 556, 261 S.W.2d 549, 552 (1953).

■■■ Irrespective of the nature of the right threatened, the granting of an injunction may also depend on the absence of an adequate remedy at law. *Storey v. Central Hide & Rendering Co.,* 148 Tex. 509, 226 S.W.2d 615 (1950); *Covarrubia v. Butler,* 502 S.W.2d 229, 230 (Tex.Civ.App.-San Antonio 1973, writ ref'd). However, the existence of a remedy at law is not ground for denial of injunctive relief unless the legal remedy is as practical and efficient to the ends of justice as the equitable remedy.

*Sumner v. Crawford*, 91 Tex. 129, 41 S.W. 994, 995 (Tex.1897); *Irving Bank & Trust Co. v. Second Land Corp.*, 544 S.W.2d 684, 688 (Tex.Civ.App.-Dallas 1976, no writ); *Long v. Castaneda*, 475 S.W.2d 578, 582 (Tex.Civ.App.-Corpus Christi 1971, writ ref'd n. r. e.).

 A court is authorized and empowered to grant injunctive relief when it is made clear to appear that without it irreparable injury will result. *Dunn v. City of Austin*, 77 Tex. 139, 11 S.W. 1125, 1127 (1889). An irreparable injury is an injury of such a nature that the injured party cannot be adequately compensated therefor in damages, or that the damages which result therefrom cannot be measured by any certain pecuniary standard. *Southwestern Chemical Co. v. Southeastern Pipeline Co.*, 369 S.W.2d 489, 492 (Tex.Civ.App.-Houston 1963, no writ); *Wilson v. Whitaker*, 353 S.W.2d 945 (Tex.Civ.App.-Houston 1962, no writ). If there is a question as to plaintiff's right to prevail, and it does not appear that a temporary injunction is required to prevent injury to plaintiff, it is within the discretion of the trial judge to deny interlocutory relief. *Zmotony v. Phillips*, 529 S.W.2d 760 (Tex.1975).

 We agree with the trial court that appellant failed to show a probable right of recovery or a probable injury and hence had no right to the preservation of the status quo by injunction. The documents in evidence explicitly deny appellant's right to the water. His own testimony reflects the adequacy of a remedy at law. Appellant testified that there was sufficient water pressure from his service connection to water his lawn. After a review of the evidence, we believe some issues of fact exist. Therefore, we may reverse the action of the trial court only upon a clear abuse of discretion. We find that the trial court did not abuse its discretion in denying appellant injunctive relief. Considering only the undisputed facts, we believe the trial court correctly applied the law to the facts. Accordingly, appellant's point of error is overruled.

Judgment of the trial court is affirmed.