Rosa De Saron **CHURCH**, Appellant,

v.

Emilio **RODRIGUEZ**, et al., Appellee.

No. 13–88–157–CV.

Court of Appeals of Texas,
Corpus Christi.

March 16, 1989.

Fred Galindo, Brownsville, for appellant.

William T. Deane, Harlingen, for appellee.

Before NYE, C.J. and KENNEDY and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

Appellant, Rosa De Saron Church (Church), filed suit to set aside a foreclosure sale of real property and to recover damages from appellee for alleged structural defects of a church building situated on the property. Appellee, Emilio Rodriguez, counterclaimed to recover a deficiency judgment for taxes that were delinquent at the time of the foreclosure sale. After a bench trial, the court denied Church's claims and ordered that it take nothing and that Emilio Rodriguez recover $10,678.75 plus attorney fees. By eight points of error, appellant complains of legal and factual insufficiency to support the trial court's judgment.

Rosa de Saron Church purchased a lot with a church situated on it from Emilio Rodriguez in 1981. The property was sold "as is." Church made a partial cash payment and executed a promissory note to Rodriguez for the remaining amount due. The promissory note was secured by a deed of trust.

In March 1983, a wind storm hit the San Benito area where the church was located. Subsequent to the storm, it was noticed that the structure was damaged in that it had a sagging roof and deflecting walls. Church presented a claim to its insurance company; however, the coverage was denied on the basis that a structural defect (improperly designed trusses) caused the damage to the structure.

In April 1987, Rodriguez advised Church of his intent to accelerate the maturity of the note for failure to make payments. Notice of the trustee's sale and acceleration of the note was also sent. A temporary restraining order was issued, but it was later dissolved and application for a temporary injunction was denied. At the trustee's sale held on June 2, 1987, Rodriguez purchased the property for $18,-623.35.

Church contends the evidence was legally and factually insufficient to support the trial court's following findings of fact:

3. Said improvements to the real property were sound and fit for the purposes for which plaintiff intended to use them.

4. The building was constructed in accordance with plans and specifications which were designed by a registered professional engineer.

5. The trusses for the roof were sufficient to support the roof structure as originally designed.

6. Any damages to the roof, walls, or interior or exterior of the building were either by a severe windstorm, a hurricane, or ordinary wear-and-tear between the time of the construction of the building and the time of the trial of this case. Plaintiff did not establish the cause of such damages.

In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding and disregard all evidence and inferences to the contrary. *Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985); *International Armament Corp. v. King*, 686 S.W.2d 595, 597 (Tex.1985); *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *In Re King's Estate*, 244 S.W.2d at 661, 662.

An assertion that the evidence is "insufficient" to support a finding can mean that the evidence supporting the finding is so weak or that the evidence to the contrary is so overwhelming that we should set aside the finding and order a new trial. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We consider all of the evidence in making this determination. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986).

■ Emilio Rodriguez testified that he built the church in 1978 and that there had been no problems with the building before a high wind storm struck the San Benito area. He testified that after a very high wind storm in March 1983, there was damage to the building which affected the wood and metal in the beams. This caused the roof to come down and the outer walls to part. It was his opinion that only the storm could have caused the damage to the building.

Rodriguez testified that an engineer, De La Rosa, designed the building. Rodriguez said that all the boards had gusset plates and that his supports were in compliance with the plans received from the engineer. He also testified that the city inspector of San Benito inspected his plans and gave him permission to construct.

John Adams, the building inspector and zoning administrator for the City of San Benito at the time the building was constructed testified that regular inspections (about 10–16 inspections) were conducted during the construction of the church. He said he personally made one or two inspections of the structure. On one occasion, he advised Rodriguez to make some modifications in the construction by putting supports in a particular area. Adams said Rodriguez complied with his instructions and thereafter the structure passed inspection. Adams testified that the trusses in the building were required to be designed by an engineer. It was his opinion that when a roof starts coming down and the walls start parting in a building the size of the church, the only cause he could contribute it to would be that the bars are not placed in the foundation and given proper support. However, he said that a big wind storm can cause damages and there is no way to tell which damages are caused by the storm and which from the rebar.

Ricardo Rodriguez, the pastor with the church, said when he observed the church, in 1980 or 1981, he looked at everything and he did not see any damage. He said when the building was purchased it was a good sound structure. The pastor said that in March 1983, a storm hit the structure and caused a three to four foot crack in the ceiling, as well as cracks in the walls and windows. He said no one made repairs or modifications on the building from the time it was purchased until June 1987, but the building continued to be used from 1983 through 1987 as a church.

Johnny Villarreal, a building contractor, testified that he observed the building five years ago. He said it was in poor condition —with a gap on the crown of the ceilings and sagging or bowing walls. It was his opinion that the structure was irreparable. He said it would be difficult to discern after a storm which damages were caused by the storm and which damages were caused by a construction defect.

Gilbert Hernandez, an instructor of building technology and owner of a construction service, inspected the church in November 1986. He found the walls were out of "plumb," that there were wall stress cracks, a sagging roof, cracked window glass, and that in many locations the trusses were missing "gusset plate connectors." He testified that even without the storm the damages would have eventually occurred, but that the winds "helped it along." He said the building would not be in the condition it was in if the trusses had been properly designed. When asked to specify if the damages were caused by contractor defect, design defect or a storm, he answered, "The only thing I can say is that the physical make up of the trusses are very poor. Whether the contractor made it or whatever made it, I have no idea, I wasn't the one that made it, but there are integral parts of the truss that are missing." Hernandez said he could not tell if the damages were caused one hun-

dred percent from failure of the contractor or one hundred percent from the storm.

After reviewing all of the evidence, we find that it is legally and factually sufficient to support the trial court's contested findings of fact. Church's points of error six, seven and eight are overruled.

Church also questions the legal sufficiency of the evidence regarding the trial court's finding of fact that "at the time of the foreclosure sale, payments had not been tendered to defendant as required under the terms of the note." Church argues that it made a valid legal tender under the terms of the note so as to render the foreclosure sale invalid. "Tender" is defined as an unconditional offer by a debtor or obligor to pay another, in correct coin of the realm, a sum not less than the amount due on the specified debt or obligation." *Veale v. Rose*, 657 S.W.2d 834, 839 (Tex. App.—Corpus Christi 1986, writ ref'd n.r. e.).

█ The party asserting a valid tender has the burden of proving it. *Arguelles v. Kaplan*, 736 S.W.2d 782, 784 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.); *C.F. Bean Corp. v. Rodriguez*, 583 S.W.2d 900, 901 (Tex.Civ.App.—Corpus Christi 1979, no writ). As a general rule, a tender must include everything the creditor is entitled to, and a tender of any less sum is ineffectual. *French v. May*, 484 S.W.2d 420, 426–27 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.); *Hoot v. Quality Ready–Mix Co.*, 438 S.W.2d 421, 428 (Tex.Civ.App.—Corpus Christi 1969, no writ).

The note required fifty-three monthly payments of $733.33 to be made on or before the first day of the month. It contained default, acceleration and attorney's fees clauses. The evidence showed Church failed to timely pay its monthly payments. After default and the acceleration of the maturity of the note, but prior to the trustee's sale of property, Church's attorney tendered $12,474.99 to Emilio Rodriguez. Ricardo Rodriguez, the pastor of the church testified that on June 1 the church tendered approximately $12,000 to Emilio Rodriguez and that the tender was rejected. The pastor testified that neither he nor anyone else in his organization called Emilio Rodriguez or his attorneys to find out how much was owed on the note. He explained that he did not deal directly with Emilio Rodriguez regarding the tender, but that he hired his attorney to make the tender. Later he said they sent sixteen payments that were due, but he didn't know when they were sent.

Emilio Rodriguez testified that on June 1, 1987, $12,474.99 was tendered but that he rejected it because it was not the total amount owed and failed to include the interest. According to his report, the principal balance at that time was $13,933.27. After including expenses, attorney fees, and interest, the total amount due at the time of the foreclosure on June 2, 1987, was $18,623.35.

█ Church contends that even though it did not tender the amount Rodriguez asserts was due, the sale should be set aside because Church tendered the amount of money it believed was due. Church argues that two circumstances in this case support its position that a good faith tender should be sufficient to set aside the sale. First, the notice of intent to accelerate the note from Rodriguez did not state the amount that was due. Secondly, Rodriguez did not explain his reason for rejecting the tender amount that was offered.

Rodriguez counters that, as the evidence shows, the amount due was readily ascertainable from the documents; the law does not require that the notice describe the amount due; and Church never inquired, either before or after tender, as to what amount was owing to discern the payoff amount.

Church cites *Lee v. Howard Broadcasting Corp.*, 305 S.W.2d 629 (Tex.Civ.App.—Houston 1957, writ dism'd by agreement) to support its proposition that the full amount due was not required to be tendered to be a valid tender. But Church's reliance on *Lee* is misplaced. *Lee* was an appeal from an injunction prohibiting a mortgagee from exercising a power of sale conferred by a deed of trust. In *Lee* the debtor tendered more than the amount it

believed was due and requested the court to determine the full amount owed. The court held that injunctive relief was a proper remedy when the amount due was contested and the documents concerning the debt were ambiguous.

In the case at bar, the record reflects appellant was denied injunctive relief. There is nothing in the record to suggest that it was urged, at the time the injunction was sought, that Rodriguez' claim was excessive, nor was the money tendered until after the injunction was denied. *Lee* is not supportive of appellant's position.

A contention similar to Church's was considered in *Barreda v. Merchant's Nat. Bank*, 206 S.W. 726, 727 (Tex.Civ.App.— San Antonio 1918, no writ). In *Barreda* the debtor urged that he did not have to tender the amount demanded by the creditor, but could tender what he reasonably believed was due because the creditor had exclusive knowledge of the amount due. The court found that the evidence failed to show the creditor had exclusive knowledge and discussed the debtor's theory.

> The theory advanced by appellant would revolutionize the law as to tender, and make the collection of interest and attorney's fees dependent on what a debtor believed he owed regardless of the true amount shown to be due and claimed by the creditor. If a debtor tenders a less amount than the actual debt, he does it at his peril no matter how well informed the creditor may be as to the true amount.

We find that no circumstances were proved that would warrant a departure from the rule that to prevent a trustee's sale under a deed of trust the full amount of principal and interest must be tendered. *American Century Mortgage Investors v. Regional Center, Ltd.*, 529 S.W.2d 578, 584 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r. e.); *compare with Collingsworth v. King*, 155 Tex. 93, 283 S.W.2d 30, 32 (1955) (tender was $52.07 short of the actual amount owed, but it was valid because the tender was refused on specific grounds other than insufficiency and the evidence showed the debtors were ready, willing and able to pay the correct amount at the time of tender). Therefore, we find that the evidence was legally sufficient to support the trial court's finding of fact. All of the points of error are overruled.

The judgment of the trial court is AFFIRMED.