**C.K. DOERWALD, Appellant,**

v.

**MBANK FORT WORTH, N.A., (formerly known as Continental National Bank of Fort Worth); James Shield, II, Substitute Trustee; Victor E. McCall; Thomas E. Turner, Trustee; James C. Morgan, Individually and as Trustee; and Donald H. Ray, Trustee, Appellees.**

No. 2–86–216–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 29, 1987.

Wesley C. Stripling, IV, Fort Worth, for appellant.

McDonald, Sanders, Ginsburg, Newkirk, Gibson & Webb, and Robert L. Ginsburg, Harris, Finley, Creel & Bogle, P.C., and Bill F. Bogle, Fort Worth, for appellees.

Before BURDOCK, JOE SPURLOCK, II, and KELTNER, JJ.

OPINION

KELTNER, Justice.

This is an appeal of the denial of a temporary injunction.

C.K. Doerwald sought to enjoin MBank Fort Worth ("Bank") from proceeding with a foreclosure sale on real property in which he claimed an ownership interest. The trial court, after a hearing, refused to enter the injunction. The court filed findings of fact and conclusions of law.

We affirm, because we find the trial court did not abuse its discretion in denying the injunction.

The property that is the subject matter of this case is located at 4425 West Vickery in Fort Worth, Tarrant County, Texas. At the first time relevant to these proceedings, the property was owned by James Morgan ("Morgan") and Victor McCall ("McCall"). (Morgan and McCall formed a partnership. It is unclear from our record whether the property was owned by the partnership or the individuals.) In July 1977, Morgan and McCall executed a note to United Savings, in the amount of $1,029,-000. The note was secured by deed of

trust covering the property and other nearby property. In December 1980, Robert C. Riddell ("Riddell") purchased Morgan's undivided one-half interest in the property, and gave Morgan notes for $265,000 and $7,500. These notes were secured by deed of trust covering the property, creating a second lien in favor of Morgan.

Later that month, McCall, Riddell, and Doerwald became venturers in the Vickery West Joint Venture ("Joint Venture"), executing a Joint Venture Agreement. The ownership of the property was transferred into the Joint Venture. Doerwald was given a 5% interest in net profits because he brought Riddell and McCall together and helped arrange loans to the Joint Venture. In early February 1981, the same parties executed an amended Joint Venture Agreement ("Agreement"). The Agreement gave McCall and Riddell sole management of the Joint Venture, including the right to mortgage the property without Doerwald's consent. Further, McCall was to receive 50% of the net profits of the Joint Venture, Riddell 45%, and Doerwald 5%. The losses were to be charged equally to only McCall and Riddell. No future contributions were required of Doerwald.

In the meantime, Doerwald negotiated loans from the Bank to improve the Joint Venture property. The notes were signed by McCall and Riddell and were secured by a deed of trust on the property. The notes were originally in the amount of $182,000 and reduced to $137,000.

Eventually, Riddell fell behind in his payments to Morgan. Initially Riddell borrowed the monthly payments from the Bank, but eventually he could no longer afford the payments. Morgan threatened to foreclose his second lien on the Joint Venture property. Therefore, in early June of 1982, Riddell assigned all of his interests in the Joint Venture to McCall. McCall, in turn, borrowed $350,000 from the Bank, using the funds to pay off Riddell's $265,000 note to Morgan, the $137,000 in notes to the Bank, and Riddell's other notes to the Bank. As a result, the Bank took a deed of trust on the Joint Venture property for the amount of the $350,000 loan.

Almost four years later, McCall defaulted on the loan to the Bank. The Bank sought to foreclose on the property to collect its loan. Doerwald brought this suit to enjoin the foreclosure. Doerwald claimed that the Bank's deed of trust was void because McCall did not have the authority to mortgage under the terms of the Joint Venture Agreement. Doerwald also claims that McCall's act in mortgaging the property resulted in his forfeiture of any right to the Joint Venture property. Simply stated, Doerwald claims that without investing any money, he owns the property, clear of the Bank's deed of trust. The trial court conducted a hearing without a jury, and denied the temporary injunction. Findings of fact and conclusions of law were filed. Doerwald has perfected his appeal to this court.

An interlocutory appeal of a denial of a temporary injunction is allowed under the Texas Civil Practice and Remedies Code. TEX.CIV.PRAC. & REM.CODE ANN. sec. 51.014 (Vernon 1986). However, the Texas Supreme Court has repeatedly held that appellate review in such instances is limited to the question of whether there has been a clear abuse of discretion in denying the temporary injunction. *See e.g., Brooks v. Expo Chemical Co.,* 576 S.W.2d 369, 370 (Tex.1979); *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978); *State v. Southwestern Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex.1975). On this interlocutory appeal, we may not consider the merits of the underlying case or attempt to substitute our judgment for that of the trial court. *Davis,* 571 S.W.2d 861–62. Instead, our inquiry is simply to determine if the trial court's actions demonstrate a clear abuse of discretion. The test for abuse of discretion is whether the court acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). Another way of stating the test is whether the act was arbitrary or unreasonable. *Id.* at 242. In order to prevail in the trial court, Doerwald had to show (1) a wrongful act; (2) imminent harm; (3) irreparable in-

jury; and (4) the absence of an adequate remedy at law. *Frey v. DeCordova Bend Estates Owners Ass'n*, 632 S.W.2d 877, 881 (Tex.App.—Fort Worth 1982), *aff'd*, 647 S.W.2d 246 (Tex.1983). To warrant the granting of an injunction, an applicant is not required to establish that he will prevail on final trial; he needs only to plead a cause of action and to show a probable right on final trial to the relief he seeks and probable injury in the interim. *Sun Oil Company v. Whitaker*, 424 S.W.2d 216, 218 (Tex.1968).

In his first three points of error, Doerwald contends that the trial court's findings that he failed to establish a probable right of recovery, irreparable injury, and the lack of an adequate remedy at law, were against the great weight and preponderance of the evidence and were contrary to established precedent.

Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's verdict upon special issues. *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them, *First Nat. Bank in Dallas v. Kinabrew*, 589 S.W.2d 137, 146 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.), by the same standards as are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a special issue. *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.).

In reviewing the order granting or denying a temporary injunction, we must draw all legitimate inferences from the evidence in the light most favorable to the trial court's judgment. *Diesel Inj. Sales & Service, Inc. v. Renfro*, 619 S.W.2d 20, 21 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.); *Hartwell's Office World v. Systex Corp.*, 598 S.W.2d 636, 638 (Tex.Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.).

In his first point of error, Doerwald contends that the trial court's finding that he did not establish a probable right to recovery was against the great weight and preponderance of the evidence. Specifically, Doerwald contends that the Bank's deed of trust lien is invalid because McCall had no authority to mortgage the Joint Venture property.

▪ The Agreement states that the individual joint venturers cannot assign their right in the specific Joint Venture property, "for other than a joint venture purpose." The court ruled that the $350,000 "borrowed by McCall was for a joint venture purpose and protected the venture's interest in the property ... by buying out Riddell who could no longer meet his obligations and paying off Riddell's obligee Morgan, ..." It is this finding Doerwald claims is against the great weight and preponderance of the evidence.

In reviewing the evidence, we find there is ample evidence to support the trial court's finding. McCall testified that he executed the $350,000 note and deed of trust to the Bank solely for a joint venture purpose, as that purpose is defined in the Agreement. The Agreement states that the purpose of the Joint Venture is to "own, hold and operate for investment purposes the real property ... and to do all things necessary for the operation of such activities."

McCall testified that he executed the deed of trust of the Bank to restructure the existing Joint Venture debt and prevent Morgan from foreclosing on the Joint Venture property. All parties admit that Morgan was threatening foreclosure and that the payoff of the Morgan debt allowed the Joint Venture to continue for an additional four years. Doerwald testified at the hearing that Morgan's foreclosure on the deed of trust would have "impaired the ability of the Joint Venture to continue." There is other evidence from the Bank officers that the loan of $350,000 from the Bank and resulting deed of trust were a part of McCall's effort to restructure the Joint Venture debt and to avoid imminent foreclosure.

▪ Doerwald also contends that McCall had no authority to mortgage the property

without Riddell's consent. As a result, Doerwald contends he showed a probable right of recovery because the deed of trust in favor of the Bank is void.

The record reflects that Riddell conveyed his interest in the Joint Venture to McCall on June 9, 1982, leaving McCall as the only managing partner in the Joint Venture. Therefore, Riddell's consent was not needed to mortgage partnership property after that date. The deed of trust in favor of the Bank was not executed until later. Nonetheless, the property was already mortgaged for $265,000 by Riddell. It was this note and deed of trust, upon which immediate foreclosure was threatened, which was paid off by the Bank's loan of $350,000 to McCall. Drawing all legitimate inferences from this evidence in support of the trial court's judgment, we conclude that the trial court did not abuse its discretion in failing to find that Doerwald established a probable right of recovery. Doerwald's first point of error is overruled.

In his second and third points of error, Doerwald claims the trial court erred in finding that he failed to establish an irreparable injury and that he lacked an adequate remedy at law.

In order to obtain a temporary injunction, an applicant must show not only a probable right of recovery, but probable injury for which there is no adequate remedy at law. *Frey*, 632 S.W.2d at 881. An irreparable injury is one of such a nature that the injured party cannot be adequately compensated by damages, or that damages resulting from the injury cannot be measured by any pecuniary standard. *McGonagill v. Hide–A–Way Lake Club, Inc.*, 566 S.W.2d 371, 375 (Tex.Civ.App.—Tyler 1978, no writ).

■ When we apply the law to the facts of this case, it is obvious there is ample evidence to support the trial court's finding that Doerwald failed to prove an irreparable injury or an inadequate remedy at law.

Doerwald's interest in the property was limited by the Agreement to the 5% interest in profits. It is clear from the face of the Agreement that Doerwald did not have an equitable interest in the land itself. As a result, the trial court held that Doerwald's remedy would be an action for lost profits. Those lost profits would certainly be measured by a pecuniary loss standard.

Additionally, there was evidence that the property had not made a profit and that the loans against the property clearly outweighed the property's actual value. Drawing all legitimate inferences from this evidence in support of the trial court's judgment, we conclude that the trial court did not abuse its discretion in failing to find an irreparable injury or an inadequate remedy at law.

■ Nonetheless, Doerwald asserts that the case is controlled by the Texas Partnership Act, TEX.REV.CIV.STAT.ANN. art. 6132b (Vernon 1970). Specifically, Doerwald claims that the Texas Partnership Act provides that appellant's 5% interest is equivalent to a tenancy in partnership, thereby entitling Doerwald to an equal access to the land itself. As a result, Doerwald claims that since title to real property is involved, he is entitled to a temporary injunction.

This argument ignores the fact that Doerwald's interest in the property was limited by the Agreement to 5% of the profits. The Agreement does not give Doerwald an interest in the land.

Further, section 18 of the Partnership Act states that in the absence of agreement, a partner is required to contribute toward losses sustained by the partnership according to his share in the profits. TEX. REV.CIV.STAT.ANN. art. 6132b, sec. 18(1)(a) (Vernon 1970). Thus, even if other sections of the Partnership Act apply to Doerwald's interest, section 18 clearly states that the Agreement will control. A partner with an equitable interest is required to share in losses. The Agreement's provision providing that Doerwald would not participate in losses makes it clear that Doerwald was not intended to be an equitable owner of an interest in the property.

In a similar vein, Doerwald contends when ownership of real estate is involved, the existence of a right of action for damages is not ground for denying equitable relief. *Irving Bank & Trust Co. v. Second*

*Land Corp.,* 544 S.W.2d 684, 688 (Tex.Civ. App.—Dallas 1976, writ ref'd n.r.e.). In the *Irving Bank & Trust* case, the Dallas court allowed equitable relief to issue, even though there was an adequate remedy at law, when title to land was involved. However, the Dallas court limited the application of the above cited rule to instances in which a legal remedy is not, "as practical and efficient to the ends of justice as the equitable remedy." *Id.* at 688, *citing Sumner v. Crawford,* 91 Tex. 129, 41 S.W. 994, 995 (1897), and *Long v. Castaneda,* 475 S.W.2d 578, 582 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.).

Additionally, the *Irving Bank & Trust* case holding was limited to controversies in which the applicant for equitable relief was an owner of land. In the instant case, Doerwald is not an owner of land, merely the holder of a right to profits.

As a result, we overrule Doerwald's second and third points of error.

▉ In his fourth point of error, Doerwald claims that he was denied due process of law because he was not afforded sufficient time to present all of his witnesses and evidence at the temporary injunction hearing.

Specifically, Doerwald claims that he never "rested his case and, had made known to the Court that he had additional witnesses and evidence." Doerwald cites us to the point in the record where he allegedly made this information known to the court. The record reflects the following:

THE COURT: I have got 4:15, gentlemen.

MR. BOGLE: Could we have a stipulation to three or four instruments, Judge?

THE COURT: All right. I think there had also been discussions as to whether or not there would be a stipulation about whether the—

MR. BOGLE: I wanted to offer that right now.

THE COURT: All right. Go ahead.

MR. BOGLE: Let the record show that Plaintiff's counsel and Defendants' counsel have stipulated and do stipulate that the $350,000.00 promissory note to M Bank is in default and was in default when it was posted—when the deed of trust securing it was posted for foreclosure.

So stipulated?

MR. COLLINS: I will agree it is in default, Your Honor. Unfortunately, I have not even had time to put on my evidence—or I haven't called my witnesses yet to prove that the property has not been properly posted for foreclosure. So I cannot stipulate to that particular fact. But I will stipulate that the property— excuse me—that the $350,000.00 is in default.

THE COURT: And we all know that the property is posted. Whether it is properly posted or not, that's a contention between the parties. But it is posted; otherwise, we wouldn't be up here.

MR. COLLINS: All right, Your Honor.

Thereafter, the record reflects that the trial court allowed several documents to be entered into evidence, accepted stipulations of the parties, and discussed when it would rule. The court was careful to put on the record that the plaintiff had not rested, but that the court had closed all of the evidence. The record does not reflect any requests by Doerwald to continue the hearing or to put on additional witnesses. Furthermore, the record does not reflect any attempt by Doerwald to inform the court who the additional witnesses would be and to what they would testify. In this court, Doerwald has not attempted to explain why the trial court's action in closing the evidence, after a three day hearing on the temporary injunction, caused harm.

As a result, Doerwald has waived any objection he might have had. TEX.R.APP. P. 52.

In summary, the trial court did not abuse its discretion in denying the temporary injunction, as its actions were neither arbitrary nor unreasonable.

We have overruled each of Doerwald's points of error, and affirm the judgment of the trial court.