ACCEPTED
03-15-00022-CV
4584091
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/20/2015 3:00:01 PM
JEFFREY D. KYLE
CLERK

**Oral Argument Requested**

No. 03-15-00022-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
3/20/2015 3:00:01 PM
JEFFREY D. KYLE
Clerk

## IN THE COURT OF APPEALS

## FOR THE THIRD DISTRICT OF TEXAS

## AT AUSTIN, TEXAS

BEACON HILL STAFFING GROUP, LLC,
CODY COX, and BRANNON ROSS,
*Appellants*,

v.

KFORCE, INC,
*Appellee.*

On appeal from Cause No. D-1-GN-14-004781
In the 98th District Court of Travis County, Texas
Honorable Gisela Triana, Judge Presiding

## APPELLANTS' BRIEF

Rick L. Lambert
State Bar No. 11844725
rick.lambert@uwlaw.com
Jennie C. Knapp
State Bar No. 24069350
jennie.knapp@uwlaw.com
Underwood Law Firm, P.C.
P. O. Box 9158
Amarillo, Texas 79105
Telephone: (806) 376-5613
Facsimile: (806) 379-0316

*Attorneys for Appellants*

# IDENTITY OF PARTIES AND COUNSEL

Appellants:    Beacon Hill Staffing Group, LLC

        Cody Cox

        Brannon Ross

Appellants' Counsel: Rick L. Lambert
        State Bar No. 11844725
        rick.lambert@uwlaw.com
        Jennie C. Knapp
        State Bar No. 24069350
        jennie.knapp@uwlaw.com
        Underwood Law Firm, P.C.
        P. O. Box 9158
        Amarillo, Texas 79105
        Telephone: (806) 376-5613
        Facsimile: (806) 379-0316

Appellee:     Kforce, Inc.

Appellee's Counsel:  Bruce A. Griggs
        State Bar No. 08487700
        bruce.griggs@ogletreedeakins.com
        Martin A. Rodriguez
        State Bar No. 24071129
        martin.rodriguez@ogletreedeakins.com
        Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
        301 Congress Avenue, Suite 1150
        Austin, Texas 78701
        Telephone: 512-344-4700
        Facsimile: 512-344-4701

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ...........................................................2

TABLE OF CONTENTS..................................................................................3

INDEX OF AUTHORITIES..............................................................................4

STATEMENT OF THE CASE............................................................................5

STATEMENT REGARDING ORAL ARGUMENT .............................................6

ISSUES PRESENTED.....................................................................................7

STATEMENT OF FACTS ................................................................................8

    A. The staffing industry................................................................................8

    B. Cox and Ross .........................................................................................9

SUMMARY OF THE ARGUMENT ................................................................11

ARGUMENT ..............................................................................................11

    A. Standards of Review ..............................................................................11

    B. The Temporary Injunction is an overly broad, impermissible
    restraint on trade ......................................................................................12

        1. The Temporary Injunction is not limited in time .....................................13

        2. The Temporary Injunction impermissibly prevents Appellants from
        using public information.................................................................14

    C. Injunctive relief is not appropriate because Kforce did not establish that
    it suffered an irreparable injury and it has an adequate remedy at law ...............18

PRAYER....................................................................................................20

CERTIFICATE OF COMPLIANCE.................................................................21

CERTIFICATE OF SERVICE ........................................................................22

APPENDIX.................................................................................................23

# INDEX OF AUTHORITIES

**Cases**

*A.C. Crouch v. Swing Machinery Co.*,
468 S.W.2d 604 (Tex. App. – San Antonio 1971, no writ) ..................................15

*Democracy Coal. v. City of Austin*,
141 S.W.3d 282 (Tex. App. – Austin 2004, no pet.)............................................19

*Doerwald v. Mbank Fort Worth, N.A.*,
740 S.W.2d 86 (Tex. App. – Fort Worth 1987, no pet.) ............................... 18, 19

*EMS USA, Inc. v. Shary*,
309 S.W.3d 653(Tex. App. – Houston [14th Dist.] 2010, no pet.) ......................16

*Harbor Perfusion, Inc. v. Floyd*,
45 S.W.3d 713 (Tex. App. – Corpus Christi 2001, no pet.).......................... 11, 14

*Leon's Fine Foods, Inc. v. McClearin*,
No. 05-97-01198-CV, 2000 WL 277135
(Tex. App. – Dallas 2000, no pet.) ................................................................ 13-14

*Marsh USA Inc. v. Cook*,
354 S.W.3d 764 (Tex. 2011) ...............................................................................13

*McGonagill v. Hide-A-Way Lake Club, Inc.*,
566 S.W.2d 371 (Tex. Civ. App. – Tyler 1978, no writ) .....................................18

*Miller Paper Co. v. Roberts Paper Co.*,
901 S.W.2d 593 (Tex. App. – Amarillo 1995, no writ) ........................................15

*Rimes v. Club Corp. of Am.*,
542 S.W.2d 909 (Tex. Civ. App. – Dallas 1976, writ ref'd n.r.e.).......................13

*Sadler Clinic Ass'n, P.A. v. Hart*,
403 S.W.3d 891 (Tex. App. – Beaumont 2013, pet. denied) ...............................13

*Tenant Heath Ltd. v. Zamora*,
13 S.W.3d 464(Tex. App. – Corpus Christi 2000, pet. dism'd w.o.j.).................12

*Trilogy Software, Inc. v. Callidus Software, Inc.*,
143 S.W.3d 452 (Tex. App. – Austin 2004, pet. denied)......................................15

*Unitel Corp. v. Decker*,
731 S.W.2d 636 (Tex. App. – Houston [14th Dist.] 1987, no writ).....................16

*Walling v. Metcalfe*,
863 S.W.2d 56 (Tex. 1993) ............................................................................. 11, 12

*Wilson v. Chemco Chem. Co.*,
711 S.W.2d 265 (Tex. App. – Dallas 1986, no pet.) ...........................................13

**Statutes**

TEX. BUS. & COMM. CODE § 15.50 .................................................................. 12, 13
TEX. BUS. & COMM. CODE § 15.05 .................................................................. 13, 16

## STATEMENT OF THE CASE

This is an interlocutory appeal from a Temporary Injunction. Appellants Brannon Ross ("Ross") and Cody Cox ("Cox") are former employees of Appellee Kforce, Inc. ("Appellee" or "Kforce"). On November 17, 2014, more than five months after they each left Kforce's employ, Kforce filed this lawsuit against Ross, Cox, and their new employer, Beacon Hill Staffing Group, LLC ("Beacon Hill"). (CR 4) In the lawsuit, Kforce attempts to enforce non-disclosure and non-solicitation agreements. To that end, Kforce sought and obtained a temporary restraining order on November 19, 2014. (CR 84) A temporary injunction hearing was held on December 17, 2014, and a Temporary Injunction was entered on December 19, 2014. (CR 191 [Temp. Inj.]) Beacon Hill, Cox, and Ross (collectively the "Appellants") filed this appeal from the Temporary Injunction.[1] (CR 218)

---

[1] Appellants filed a Motion to Modify the Temporary Injunction, which remains pending in the trial court. If the Motion is granted, this Court will be notified promptly as parts of this appeal could become moot.

## STATEMENT REGARDING ORAL ARGUMENT

Appellants believe that oral argument would aid the Court; therefore, pursuant to Texas Rule of Appellate Procedure 39, Appellants respectfully request oral argument.

# ISSUES PRESENTED

1. Whether the temporary injunction should be dissolved when it restricts competition (a) beyond the terms stated in the Agreement, (b) in excess of what would be supported by the trial court's findings of fact, and (c) in violation of Texas law.

## STATEMENT OF FACTS

### A. The staffing industry.

Both Kforce and Beacon Hill are staffing agencies engaged in the business of placing personnel ("candidates") with companies ("clients") seeking to fill job openings in the information technology and finance sectors. The staffing industry is highly competitive, with many staffing companies identifying prospective clients, accessing available job openings, and attempting to find candidates for the job openings.

Within a staffing company, an "account manager" works to identify potential job openings at companies with hiring needs. (2 RR 32) Most, if not all, of these job openings are publicly posted. (2 RR 63) Once a job opening with a client is identified, an account manager uses a talent representative or recruiter to "match" a candidate to the open position. The only source of revenue a staffing agency receives is a commission from a client when a "match" is achieved. Although a particular client may regularly utilize the services of a particular staffing agency, the relationship is not exclusive. (2 RR 111) The staffing agency derives no revenue from the mere existence of a client relationship.

In the staffing industry, there is candidate and client "overlap." That is to say, a company typically attempts to fill a job opening with the assistance of multiple staffing agencies because it wants to get as much exposure as possible for

its job opening in order to locate the best candidate. (2 RR 63, 80, 98-99, 111; 3 RR Def. Exh. 3-6) Similarly, candidates often post their resumes with multiple staffing agencies (as well as numerous other online sources) in an attempt to expose their talents and skills to as many potential employers as possible. (2 RR 83, 86, 98-99)

In addition to utilizing multiple staffing agencies to fill job openings, companies often post their job openings on their company website, as well as public internet job boards such as Careerbuilder.com, LinkedIn.com, monster.com, dice.com, or Craigslist.com to achieve maximum exposure. (2 RR 111) Similarly, candidates often post their resumes on public websites such as LinkedIn.com, Discover.org, Facebook.com, Twitter.com, and Indeed.com. Job openings and candidate information, then, can be viewed instantly by the general public with click of a mouse. (2 RR 83, 84, 86)

### B. Cox and Ross.

In December 2009, Cox was hired by Kforce as a market manager. (2 RR 32) When hired, Cox signed an Employment, Non-Disclosure, and Non-Solicitation Agreement (the "Agreement") with Kforce. (3 RR Pl. Exh. 1 [Agreement]) In January 2013, Ross was hired by Kforce as a recruiter. (2 RR 95) Ross did not recall signing an identical Agreement with Kforce, although Kforce claims that he did. (2 RR 97) The Agreement provides that an employee would

not use or disclose any of Kforce's "trade secrets or other confidential information" except as needed to perform duties for Kforce. "Trade secrets and other confidential information" is defined by the Agreement to include, without limitation:

> (a) client or prospective client lists and client or prospective client contact information (including but not limited to business cards, contact persons, and hiring managers); (b) client job openings and job orders and client pricing information; (c) actual or prospective applicant, employment candidate, employee or consultant lists; (d) actual or prospective applicant, employment candidate, employee or consultant qualifications, contact information, and resumes; (e) actual or prospective applicant, employment candidate, employee or consultant compensation and benefits; and (f) other client, applicant, employment candidate, employee or consultant data or information.

(Agreement at ¶ 6) The Agreement also contains a non-solicitation covenant, which purports to prohibit, for a period of one year, employees from "directly or indirectly" soliciting or accepting business competitive with Kforce from any client "that EMPLOYEE serviced while employed" by Kforce. (Agreement at ¶ 8)

Cox resigned from Kforce on or about May 20, 2014, and is now employed by Beacon Hill. (2 RR 32) Ross resigned from Kforce on or about June 18, 2014, and began working for Beacon Hill. (2 RR 95)[2]

---

[2] For reasons unrelated to this lawsuit, Ross is no longer employed by Beacon Hill.

## SUMMARY OF ARGUMENT

The Temporary Injunction entered by the trial court should be dissolved because it is an overly broad restraint on trade. Although the Agreement on which the Temporary Injunction is based was a one-year agreement, the Temporary Injunction provides no temporal limit. This is impermissible under Texas law and amounts to an unlawful restraint on trade. The Temporary Injunction is also overly broad and unlawful because it protects information as "confidential" when it is available in the public domain. This is not permitted as a matter of law and in any event is not supported by the evidence. The Temporary Injunction was also improper because Kforce did not establish a probable irreparable injury because damages are quantifiable.

## ARGUMENT

### A. Standards of Review

The standard of review for the grant or denial of a temporary injunction is abuse of discretion. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). A trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to guiding rules or principals, or misapplies the law to the established facts of the case. *Harbor Perfusion, Inc. v. Floyd*, 45 S.W.3d 713, 716 (Tex. App. – Corpus Christi 2001, no pet.). A trial court also abuses its discretion when the evidence does not reasonably support its decision. *Id.* at 717. In reviewing the

11

grant or denial of a temporary injunction, a reviewing court should not give any particular deference to legal conclusions of the trial court and should apply a de novo standard of review regarding pure questions of law. *Tenant Heath Ltd. v. Zamora*, 13 S.W.3d 464, 468 (Tex. App. – Corpus Christi 2000, pet. dism'd w.o.j.).

For a plaintiff to be entitled to injunctive relief, he must first establish (1) that a wrongful act occurred, (2) that he has a probable right to recovery, and (3) that there is a probable injury in the interim. *Walling*, 863 S.W.2d at 57. To establish that there is probable harm, a plaintiff must establish that the harm is imminent, that the injury would be irreparable, and that the plaintiff has no other adequate remedy at law. *Zamora*, 13 S.W.3d at 468.

### B. The Temporary Injunction is an overly broad, impermissible restraint on trade.

Under long-standing Texas law, restraints on trade are illegal unless they follow strict parameters and the plaintiff can prove that it has a protectable interest that gives rise to the need for the restrictive covenant. TEX. BUS. & COMM. CODE § 15.50(a). The Temporary Injunction restrains the Appellants from competition that is broader than the restrictions stated in the Agreement, unsupported by the court's findings of fact, and it amounts to an impermissible restraint of trade under Texas law.

1. The Temporary Injunction is not limited in time.

The Temporary Injunction is not limited in time to the one-year period provided for in the Agreement. (Temp. Inj. at ¶ 12) The injunction is an impermissible restraint on trade that is not supported by the evidence and should be dissolved.

Under Texas law, non-competition and non-solicitation agreements are only allowed under a narrow set of facts and must be temporally limited. TEX. BUS. & COMM. CODE § 15.50(a); *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 777 (Tex. 2011). Any other restraint is prohibited by Texas Business and Commerce Code Section 15.05, which provides that "Every contract, combination, or conspiracy in restraint of trade or commerce is unlawful." Further, courts may not extend the period provided by a restrictive covenants contained in an employment contract. *See Sadler Clinic Ass'n, P.A. v. Hart*, 403 S.W.3d 891, 899 (Tex. App. – Beaumont 2013, pet. denied); *Wilson v. Chemco Chem. Co.*, 711 S.W.2d 265, 268 (Tex. App. – Dallas 1986, no pet.); *Rimes v. Club Corp. of Am.*, 542 S.W.2d 909, 912 (Tex. Civ. App. – Dallas 1976, writ ref'd n.r.e.).

Allowing Kforce to restrain Appellants longer than one year grants them a benefit that was neither bargained-for nor agreed to by the parties to the Agreement. The benefit given Kforce by the Temporary Injunction is broader than Texas law allows. *See Leon's Fine Foods, Inc. v. McClearin*, No. 05-97-01198-

CV, 2000 WL 277135, at *1 (Tex. App. – Dallas 2000, no pet.) (holding in noncompetition agreement case that injunctive relief was not available after the term of the covenant not to compete had expired).

Furthermore, the trial court abused its discretion in granting the Temporary Injunction beyond the time period supported by the evidence. The Agreement provides that it is only good for one-year post-termination for each employee. (Agreement at ¶ 8) This uncontroverted fact was emphasized by trial court in its findings, which state that the Agreements were good for one year from the date of termination. (Temp. Inj. at ¶¶ 1-3, 6) Any injunction must expire by its terms for Cox on May 20, 2015, one year from Cox's termination from Kforce and for Ross on June 18, 2015, one year from his termination from Kforce. (2 RR 32) The Temporary Injunction period is not supported by any evidence or the trial court's finding and the granting of it therefore amounts to an abuse of discretion. *See Harber Perfusion*, 45 S.W.3d at 717.

2.  <u>The Temporary Injunction impermissibly prevents Appellants from using public information.</u>

Public information is not protectable as a trade secret and cannot be confidential information. Yet, the Temporary Injunction purports to prohibit the Appellants' use of such information. The Temporary Injunction prohibits the use of "Kforce trade secrets and other confidential information as defined in the Agreements." (Temp. Inj. at ¶ 12.a and 12.b) The Agreements, in turn, explain

14

that "trade secret and confidential information" includes things that are not confidential, are not unique to Kforce, and are in fact public information. The Temporary Injunction allows Kforce's definition of confidential information rule the day without regard to what is actually protectable under Texas law. And, because the Agreements purport to protect un-protectable information, they are not enforceable, and injunctive relief should not have been granted.

Public information and information that can be readily obtained from a public source is not confidential. *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 603 (Tex. App. – Amarillo 1995, no writ). Texas law only protects information that is not generally known or readily ascertainable by independent investigation. *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 467 (Tex. App. – Austin 2004, pet. denied).[3] Further, storing a third party's information in a database does not convert public information to confidential information. "What is known to all cannot be converted into confidential information worthy of equitable protection by merely whispering into the ear of even the most highly trusted employee." *A.C. Crouch v. Swing Machinery Co.*, 468 S.W.2d 604, 606 (Tex. App. – San Antonio 1971, no writ). By restricting public information, the Agreements and the Temporary Injunction are naked

---

[3] Kforce has admitted in similar litigation that the purpose of a restrictive covenant is to protect trade secrets and confidential information. *See* Memorandum in Support of Motion for Temporary Restraining Order, *Kforce Inc. v. Beacon Hill Staffing Group, LLC and Gary Hahn*, Case No. 14-cv-01880, in the United States District Court, Eastern District of Missouri, Eastern Division, at p. *10-11.

15

restraints on trade, illegal, and unenforceable. *See* TEX. BUS. & COMM. CODE § 15.05(a); *Unitel Corp. v. Decker*, 731 S.W.2d 636, 636 (Tex. App. – Houston [14th Dist.] 1987, no writ); *EMS USA, Inc. v. Shary*, 309 S.W.3d 653, 658 (Tex. App. – Houston [14th Dist.] 2010, no pet.).[4]

Contrary to the trial court's conclusions and admissions of Kforce, much of the information protected by the Temporary Injunction is anything but confidential. For example, the Agreement – and by extension the Temporary Injunction – would prohibit the use of things like business cards, job openings, and resumes. (Agreement at ¶ 6) As discussed at length at the temporary injunction hearing, and as admitted by Kforce's corporate representative, much of this information included within the broad definition of "confidential" is public. (2 RR 63, 80, 83, 86, 98-99, 111; 3 RR Def. Exh. 3-6) It is freely available through quick internet searches and is published by the various clients and candidates as they seek new employees or a new job. (*Id.*) This is only logical because each client wishes to find the best employee for the job through whatever avenue possible. The customer's job requirements are not secret nor is the fact that they have a job opening. Similarly, candidates publish their resumes online on various sites, hoping that a staffing company – like Beacon Hill or Kforce – will find their resume and place them with a company. There is nothing secret or "confidential"

---

[4] The trial courts findings to the contrary are erroneous as a matter of law and are unsupported by legally or factually sufficient evidence. (*See* Temp. Inj. at ¶ 10)

about this information. Information from a third party could not be confidential to Kforce as a matter of law. For example, there is nothing confidential about a client's business card or jobs posted by the client. That information is readily available from the client and other public avenues. The fact that a client gave Kforce this information without more does not create a protectable interest in that information.

Aaron Botana, market director for Kforce, admitted that much of the information included in the definition of "confidential" in the Agreements is actually publicly available or can be obtained from an avenue of public access. (2 RR 110-11) Mr. Botana defined Kforce's protectable information as the compilation of data contained in the Recruitmax database. (2 RR 103-05) Aaron Botana acknowledged that the database contained job placements and candidate resumes that were posted in the public domain. (2 RR 110-11) The only placements that Mr. Botana stated were not public were certain temporary placements. (2 RR 107) The Temporary Injunction therefore grants more protection than is legally permitted by allowing Kforce to deem public information "confidential" because Kforce stored other people's information in its database. And, in any event, the Temporary Injunction is not supported by the evidence because it would include information that is publicly available.

The trial court allowed Kforce to define "confidential" rather than looking to Texas law and what is actually protectable. For this same reason, the restraint is vague. There is no way to know from the face of the Temporary Injunction what "confidential" really means, and even a study of the Agreement only provides that some information may be considered by Kforce to be confidential without offering guidance as to what public or other information Kforce considers secret.

**C.** **Injunctive relief is not appropriate because Kforce did not establish that it suffered an irreparable injury and it has an adequate remedy at law.**

The Temporary Injunction is further improper because, as a matter of law, Kforce has an adequate remedy at law and injunctive relief is not appropriate. For this reason, the trial courts findings of probable irreparable injury are not supported by legally or factually sufficient evidence. (Temp. Inj. at ¶¶ 10, 11) Injunctive relief is only appropriate if the plaintiff establishes an irreparable injury. An injury is irreparable if it could not be compensated by damages or that the damages resulting from the injury could not be measured by any pecuniary standard. *McGonagill v. Hide-A-Way Lake Club, Inc.*, 566 S.W.2d 371, 375 (Tex. Civ. App. – Tyler 1978, no writ). If the relief could properly be compensated by money damages, then injunctive relief is improper. *Doerwald v. Mbank Fort Worth, N.A.*, 740 S.W.2d 86, 90 (Tex. App. – Fort Worth 1987, no pet.)

18

Kforce did not identify a single lost placement due to the conduct of Cox or Ross. Even if it could, Kforce did not prove that Beacon Hill would not have made the placement without Cox or Ross, and Kforce did not prove that Kforce would have made the placement rather than Beacon Hill or one of the many other staffing companies.

That a client of Kforce allegedly did business with Beacon Hill is not dispositive because clients often engage numerous staffing companies related to the same job opening. (2 RR 110-11). Further, there is no evidence that Kforce lost a single client relationship because of the conduct of any of the Appellants. Kforce is left, then, with only a speculative loss of goodwill. As a matter of law, this does not constitute a probable, imminent, or irreparable injury. *See Democracy Coal. v. City of Austin*, 141 S.W.3d 282, 296 (Tex. App. – Austin 2004, no pet.) ("An injunction will not lie to prevent an alleged threatened act, the commission of which is speculative and the injury from which is purely conjectural.").

Furthermore, Kforce has an adequate remedy at law. To the extent that Kforce could ever prove that it lost a placement, then the profit from the placement is easily calculated. (2 RR 112) *See Doerwald*, 740 S.W.2d at 90 (holding that lost profits could be measured by pecuniary loss standard and there was therefore an adequate remedy at law and injunctive relief was improper).

## PRAYER

Appellants request that the Court dissolve the Temporary Injunction. Alternatively, Appellants request that the Court remand for the trial court to modify the Temporary Injunction (a) to specify that the Temporary Injunction is only effective to restrain Appellants until May 20, 2015, as to Cox and June 18, 2015, as to Ross, and (b) such that it restrains only Appellants' use of information that is in fact confidential and derives independent economic value from not being generally known or readily ascertainable. Appellants further request such other relief to which they may be entitled in law or in equity.

Respectfully submitted,

*/s/ Rick L. Lambert*
Rick L. Lambert

Rick L. Lambert
State Bar No. 11844725
rick.lambert@uwlaw.com
Jennie C. Knapp
State Bar No. 24069350
jennie.knapp@uwlaw.com
Underwood Law Firm, P.C.
P. O. Box 9158
Amarillo, Texas 79105
Telephone: (806) 376-5613
Facsimile: (806) 379-0316

*Attorneys for Appellants*

## CERTIFICATE OF COMPLIANCE

This document complies with the word-count limitations of Texas Rule of Appellate Procedure 9.4(i) because it contains 3,162 words, excluding the parts exempted by Texas Rule of Appellate Procedure (i)(1).

*/s/ Rick L. Lambert*
Rick L. Lambert

## CERTIFICATE OF SERVICE

I hereby certify that that on the 20th day of March, 2015, a true and correct copy of the foregoing was served via electronic service and certified mail, return receipt requested to the following:

Bruce A. Griggs
bruce.griggs@ogletreedeakins.com
Martin A. Rodriguez
martin.rodriguez@ogletreedeakins.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
301 Congress Avenue, Suite 1150
Austin, Texas 78701

*/s/ Jennie C. Knapp*
Jennie C. Knapp

# Appendix

A        Temporary Injunction

B        Agreement

# APPENDIX A

Temporary Injunction

Filed in The District Court
of Travis County, Texas

DEC 18 2014

At _____ M.
Amalia Rodriguez-Mendoza, Clerk

CAUSE NO. D-1-GN-14-004781

| | | |
|---|---|---|
| KFORCE INC., | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| BEACON HILL STAFFING GROUP, LLC, | § | |
| CODY COX, AND BRANNON ROSS, | § | |
| Defendants. | § | 98th JUDICIAL DISTRICT |

## TEMPORARY INJUNCTION

On the 17th day of December, 2014, the Court heard the application for injunctive relief by Plaintiff Kforce Inc. against Defendants Beacon Hill Staffing Group, LLC, Cody Cox, and Brannon Ross (collectively "Defendants"). The matter was heard by the Court pursuant to Plaintiff's Verified Original Petition and Application for Temporary Restraining Order, Temporary Injunction and Permanent Injunction (the "Original Petition and Application"). After considering the motion, arguments of counsel, and evidence in this case, the Court finds that immediate, irreparable injury will result unless this Court enters this Temporary Injunction:

The Court finds as follows:

1.    Cox and Ross are each subject to a written agreement, the Employment, Non-Disclosure, and Non-Solicitation Agreement (the "Agreements"), which are attached as Exhibits A (Cox) and B (Ross) to this Injunction. In the Agreements, Cox and Ross agreed not to, for a period of twelve months from the termination of their employment, "directly or indirectly solicit or accept business that is competitive with [Kforce] from any client that [Cox or Ross] serviced while employed by the [Kforce]" or "directly or indirectly attempt to divert or assist others to divert any such client's business from the [Kforce] to a competitor." These non-solicitation provisions are located in Paragraph 8(a) of the Agreements.



POSTED

JBS

191

2.     In the Agreements, Cox and Ross also agreed not to, for a period of twelve months from the termination of their employment, "directly or indirectly solicit, recruit, hire or place on assignment any staffing candidate, applicant, independent contractor, or consultant . . . with whom [Cox or Ross] had contact while employed by [Kforce]" or "directly or indirectly attempt to divert or assist others to divert such candidates, applicants, independent contractors and consultants from [Kforce] to a competitor." These non-solicitation provisions are located in Paragraph 8(b) of the Agreements.

3.     In the Agreements, Cox and Ross also agreed not to, for a period of twelve months from the termination of their employment, "directly or indirectly solicit any of [Kforce's] core (internal) employees for employment with any other person, company, firm, or business." This non-solicitation provision is located in Paragraph 8(c) of the Agreements.

4.     In the Agreements, Kforce promised to provide Cox and Ross with confidential information and trade secrets, which was defined to include "(a) client or prospective client lists and client or prospective client contact information (including but not limited to business cards, contact persons, and hiring managers); (b) client job openings and job orders and client pricing information; (c) actual or prospective applicant, employment candidate, employee or consultant lists; (d) actual or prospective applicant, employment candidate, employee or consultant qualifications, contact information, and resumes; (e) actual or prospective applicant, employment candidate, employee or consultant compensation and benefits; and (f) other client, applicant, employment candidate, employee or consultant data or information." In return, Cox and Ross promised not to "make any use of, take, download, publish or disclose, or authorize anyone to use, take, publish or disclose, any of [Kforce's] trade secrets or other confidential information." These mutual promises are contained in Paragraph 6 of the Agreements.

5.  KForce provided Cox and Ross with confidential information in the form of (1) client or prospective client lists; (2) client or prospective client contact information; (3) client job openings and job orders; (4) client pricing information; (5) actual or prospective applicant, employment candidate, employee or consultant qualifications, contact information, and resumes; and (6) actual or prospective applicant, employment candidate, employee or consultant compensation and benefits.

6.  The Agreements are an otherwise enforceable agreement to which the restrictive covenants contained therein are ancillary to or of which they are a part. The covenants contained within the Agreements include limitations as to time, geographical limit, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill, confidentiality of information and other business interests of Kforce.

7.  Cox and Ross resigned their employment with KForce and became employed by Beacon Hill Staffing Group, LLC shortly thereafter. Beacon Hill Staffing Group, LLC and Kforce are competitors.

8.  After joining Beacon Hill, Cox and Ross solicited business that is competitive with Kforce from clients that Cox and Ross serviced while employed by the Kforce. Cox and Ross also attempted to and did divert business from clients that Cox and Ross serviced while employed by Kforce from Kforce to a competitor, namely Beacon Hill.

9.  In the Agreements, Cox and Ross agreed that Kforce would be entitled to a temporary injunction against Cox and Ross if either breached any of the non-solicitation covenants described above in paragraphs 1-3. This provision is located in Paragraph 11 of the Agreements.

3

10. Kforce has demonstrated that the Agreements with Cox and Ross are enforceable under the provisions of Section 15.50 *et. seq.* of the Texas Business and Commerce Code, and that Cox and Ross were in violation of the Agreements as detailed in paragraph 8 above. Cox and Ross' continued breach of the Agreements will benefit Beacon Hill and cause irreparable injury to Kforce.

11. Defendants' possession, use, and/or disclosure of Kforce's trade secrets and other confidential information would permanently and irreparably harm Kforce's competitive advantage in the marketplace. Defendants' knowledge of KForce's pricing, customers, and/or customer's contact information could be and has been used in the solicitation of Kforce's customers. Kforce has lost and could continue to lose business from its customers as a result of Cox and Ross' actions; that loss of business could be permanent, would be difficult to quantify, and is irreparable. As such, Kforce has no adequate remedy at law for Cox and Ross' violations of the Agreements, and a temporary injunction is necessary to preserve the status quo pending a full trial on the merits of Plaintiff's claims.

IT IS ORDERED that:

12. Defendants and their respective agents, servants, employees, and/or persons in active concert or participation with them who receive actual notice of the order are temporarily ordered and restrained as follows:

a) Defendants Cox and Ross are restrained from using, disclosing, or further acquiring Kforce trade secrets and other confidential information as defined in the Agreements.

b) Defendant Beacon Hill is restrained from using, disclosing, or further acquiring Kforce trade secrets and other confidential information as defined in the Agreements, directly or indirectly acquired from, reviewed by, and/or exchanged between Cox and/or Ross and any current or former employee at Beacon Hill.

4

194

c) Defendants Cox and Ross are restrained and enjoined from directly or indirectly soliciting or accepting business that is competitive with Kforce from any client that Cox or Ross serviced while employed by Kforce/*as identified on attached EXHIBIT C.* (MAR)

d) Defendants Cox and Ross are restrained and enjoined from directly or indirectly attempting to divert or assist others in diverting business from Kforce to Beacon Hill or any other competitor from any client that Cox or Ross serviced while employed by Kforce/*as identified as attached EXHIBIT C.* (MAR)

e) Defendants Cox and Ross are restrained and enjoined from directly or indirectly soliciting, recruiting, hiring, or placing on assignment any staffing candidate, applicant, independent contractor, or consultant with whom Cox or Ross had contact and/or worked with while employed by Kforce.

f) Defendants Cox and Ross are restrained and enjoined from directly or indirectly attempting to divert or assist others to divert any staffing candidate, applicant, independent contractor, or consultant with whom Cox or Ross had contact and/or worked with while employed by Kforce from Kforce to a competitor/*as identified as attached EXHIBIT C.* (MAR)

g) Defendants Cox and Ross are restrained and enjoined from directly or indirectly soliciting any of Kforce's core (internal) employees for employment with any other person, company, firm, or business.

h) Defendants Cox and Ross are restrained and enjoined from altering or deleting the contents of any personal or business e-mail accounts pertaining to Kforce in any way.

13. If necessary, this Temporary Injunction may be enforced by seeking relief from this Court by way of a motion for contempt for a breach of this Temporary Injunction. Upon a finding by the Court that any Defendant has willfully and intentionally violated any provision of this Temporary Injunction, that Defendant may be ordered to pay Plaintiff's reasonable and necessary attorneys' fees and costs incurred in connection with the prosecution of that violation. The payment of these attorneys' fees and costs may be in addition to any other sanctions or damages, if any, imposed by the Court for violations of this Temporary Injunction.

IT IS FURTHER ORDERED that this Temporary Injunction shall continue in effect from the original date of entry of this order, December 19, 2014, until the entry of a subsequent order

expanding or limiting the scope of this Agreement, by agreement of all parties, or by resolution of the trial on the merits.

The bond previously set and paid in this matter shall remain in effect.

The trial on the merits is set for _June   1_, 201_5_.

The Clerk of the Court shall issue a Temporary Injunction in conformity with the laws and the terms of this Order.

SIGNED this _19_ day of December, 2014, at _11:15_ o'clock _a_.m.

_____
JUDGE PRESIDING

6

196

The changes initialed above are approved as to form:

Martin A. Rodriguez
Attorney for Plaintiff

Rick L. Lambert
Attorney for Defendant

By:

7

## Exhibit A

*EXHIBIT C TO TEMPORARY INJUNCTION* (handwritten)

Cisco Systems Inc
Apple Computer Inc
Travis County Criminal Courts
Texas Mutual Insurance Company
Shoretel, Inc.
Hewlett-Packard Company
Dell Professional Services
Electric Reliability Council of TX Inc
URS Corporation
Bazaarvoice
Megapathnetworks
Cirrus Logic Inc
Darling It Llc
Ticom Geomatics Inc
Software House International
Texas Health And Human Services Commission (HHSC)
Home Depot USA Inc
3M Company
Yellow Roadway Corporation
Haas TCM
NCS Pearson
At&T Services Inc (Texas)
General Motors Corporation
Cloud 816, Inc.
MegapathNetworks
Software House International
Toppan Photomask Inc
Hewlett-Packard Company
Cisco Systems Inc
Commemorative Brands Inc
Home Depot USA Inc
Haas TCM
Texas Department Of State Health Services (DSHS)
Dell Professional Services-National Only
Electric Reliability Council Of TX Inc
Texas Mutual Insurance Company
Apple Computer Inc
NCS Pearson
Texas Dept Of Information Resources
One Logos

At&T Services Inc (Texas)
Spiceworks
Ca Technologies, Inc.
Cirrus Logic Inc
Cloud 816, Inc.
Mymatrixx
Bazaarvoice
Intellicentrics / Deview Electronics, Inc.
SWBC
Kforce Professional Staffing
Dell (Perot)
City Of Austin
American Innovations
Whole Foods Market Inc

# APPENDIX B

Agreement

# EXHIBIT A



EXHIBIT

1

12-17-14  14-781

### KFORCE INC.

**KFORCE** PROFESSIONAL STAFFING

### EMPLOYMENT, NON-DISCLOSURE AND NON-SOLICITATION AGREEMENT

THIS AGREEMENT is entered into between Kforce Inc., (hereinafter called the "FIRM") and Cody Cox (hereinafter called the "EMPLOYEE"), on the 10th day of December 2009. In consideration of the EMPLOYEE's employment or continued employment with the FIRM, as well as the FIRM's obligation in connection therewith to provide EMPLOYEE with the FIRM's valuable confidential information and trade secrets, including but not limited to the FIRM's client and candidate information databases, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the FIRM and the EMPLOYEE agree as follows:

1. **Employment.** The FIRM hereby employs or continues to employ the EMPLOYEE and the EMPLOYEE hereby accepts or continues to accept employment upon the terms and conditions hereinafter set forth. The EMPLOYEE shall be subject to the policies, practices, procedures, and business directives that the FIRM adopts and amends from time to time.

2. **Extent of Services.** The EMPLOYEE shall exclusively devote his/her full business time, attention, energy, loyalty and best efforts to the business of the FIRM, and shall not, during the time this Agreement is in effect, engage in any other business activity, whether or not such other business activity is pursued for gain, profit, or other pecuniary advantage, unless such business is fully disclosed to and approved in writing by an authorized representative of the FIRM. However, the foregoing restriction shall not be construed as preventing the EMPLOYEE from investing his/her assets in such other form or manner as will not require any services on the part of the EMPLOYEE in the operation of the affairs of the companies in which such investments are made.

3. **Duties.** The EMPLOYEE is engaged to perform such duties as the FIRM may assign from time to time, including duties necessary or incidental to the operation of a personnel placement/staffing services firm. The precise services of the EMPLOYEE may be extended or curtailed, from time to time, at the direction of the FIRM. In the performance of all his/her duties, the EMPLOYEE agrees to abide by the rules, policies and standards in effect from time to time and/or which may be practiced by the FIRM in its operations.

4. **FIRM Policies and Practices.** The FIRM may, at any time and at its sole discretion, terminate, limit or modify its policies and practices, including compensation and benefit plans, and the EMPLOYEE shall have no right to the continuation of such policies, practices or plans in any particular form or for any particular period.

5. **Termination of Employment.** The term of employment of the EMPLOYEE, or the continuation of employment of the EMPLOYEE, shall be at the will of the EMPLOYEE or the FIRM. Either party may terminate this Agreement immediately, for any reason, with or without cause.

6. **Confidential Information.** The EMPLOYEE recognizes and acknowledges that the FIRM has, through the expenditure of substantial time, effort and money, developed, compiled and/or acquired certain confidential information and trade secrets which are of great value to the FIRM in its operations. The firm shall promptly supply, and will continue to supply during the course of EMPLOYEE's employment, EMPLOYEE with confidential information and trade secrets relevant to the performance of EMPLOYEE's duties hereunder.

18044 Research Boulevard | Suite D-150 | Austin, TX 78759 | 512.231.3600 | 512.345.7736 Fax | www.kforce.com.   Revised:7/28/2008

The EMPLOYEE agrees that he/she will not make any use of, take, download, publish or disclose, or authorize anyone to use, take, publish or disclose, any of the FIRM's trade secrets or other confidential information, for any reason, except to the extent authorized and required in the course of performing his/her duties on behalf of the FIRM. Upon request of the FIRM, the EMPLOYEE will promptly return, or cooperate to arrange a mutually agreeable means of destroying, all expressions of trade secrets and confidential information in his/her possession and control.

As used herein, the term "trade secrets and other confidential information" shall include, without limitation: (a) client or prospective client lists and client or prospective client contact information (including but not limited to business cards, contact persons, and hiring mangers); (b) client job openings and job orders and client pricing information; (c) actual or prospective applicant, employment candidate, employee or consultant lists; (d) actual or prospective applicant, employment candidate, employee or consultant qualifications, contact information, and resumes; (e) actual or prospective applicant, employment candidate, employee or consultant compensation and benefits; and (f) other client, applicant, employment candidate, employee or consultant data or information.

**7. Return of FIRM Property.** All information, data, lists, files, business forms, manuals, policies, training materials, communications and all other intellectual property compiled, maintained, received or used by the EMPLOYEE in the course of his/her employment with the FIRM is and shall remain at all times the exclusive property of the FIRM. Upon termination of the EMPLOYEE"s employment for any reason, the EMPLOYEE shall immediately return to the FIRM any and all tangible and intangible property of the FIRM, in whatever form, in the EMPLOYEE's possession, custody or control, including but not limited to trade secrets and confidential information as defined in the preceding section.

**8. Non-Solicitation Covenants. a)** Covenants relating to clients: the EMPLOYEE agrees that upon termination of his/her employment for any reason, the EMPLOYEE will not, for a period of twelve (12) months from the date of termination, within any geographic area serviced by EMPLOYEE during the term of his/her employment, directly or indirectly solicit or accept business that is competitive with the FIRM from any client that EMPLOYEE serviced while employed by the FIRM, nor will the EMPLOYEE for such period directly or indirectly attempt to divert or assist others to divert any such client's business from the FIRM to a competitor.

**b)** Covenants relating to staffing candidates, applicants, independent contractors and consultants: the EMPLOYEE further agrees that upon termination of his/her employment for any reason, the EMPLOYEE will not, for a period of twelve (12) months from the date of termination, directly or indirectly solicit, recruit, hire or place on assignment any staffing candidate, applicant, independent contractor, or consultant (also known as "flexible employee") with whom the EMPLOYEE had contact while employed by the FIRM, nor will EMPLOYEE directly or indirectly attempt to divert or assist others to divert such candidates, applicants, independent contractors and consultants from the FIRM to a competitor.

**c)** Covenants relating to core employees: The EMPLOYEE further agrees that upon termination of his/her employment for any reason the EMPLOYEE will not, for a period of twelve (12) months from the date of termination directly or indirectly solicit any of the FIRM's core (internal) employees for employment with any other person, company, firm, or business.

**9. Use of the FIRM'S Name or Trademarks.** Following termination of the EMPLOYEE's employment with the FIRM, the EMPLOYEE shall not use or permit the use of the FIRM's name or trademarks in any advertising, notice, solicitation or other business materials, including but not limited to indications that the EMPLOYEE was formerly employed by the FIRM.

**10. Legal Obligations to Others.** The EMPLOYEE represents, warrants and covenants that he/she has not taken, utilized or disclosed, and will not take, utilize or disclose, any trade secrets or confidential information of any previous employer, nor will the EMPLOYEE engage in activity that violates a valid and enforceable legal obligation owed to such previous employer.

**11. Enforcement.** The EMPLOYEE agrees that, in the event of a breach or threatened breach by the EMPLOYEE of any of the provisions or covenants contained in paragraphs 6, 7, 8, and 9 of this Agreement, the FIRM shall be entitled to the entry of a temporary, preliminary or permanent injunction (without any bond or other security being required) against the EMPLOYEE in any suit in equity brought for the purpose of enforcing such provisions or covenants. The consent to and the availability of an injunction as set forth above shall not preclude or prevent the FIRM from seeking or recovering monetary damages under appropriate circumstances, or pursuing other appropriate remedies. The provisions of this Agreement shall not be construed as limiting any of the FIRM's rights under the Uniform Trade Secrets Act, as adopted, or under any other laws (whether statutory or common law) including, but not limited to, laws relating to confidential information, unfair competition, computer misconduct, and fiduciary duty.

The existence of any claims or cause of action that the EMPLOYEE may have against the FIRM, whether predicated upon a breach of any part of this Agreement by the FIRM or otherwise, shall not constitute a defense to the enforcement by the FIRM of any of the covenants and obligations contained in paragraphs 6, 7, 8 and 9 of this Agreement.

**12. Assignment.** This Agreement may be assigned by the FIRM and shall inure to the benefit of and be binding upon the FIRM's successors and assigns. This Agreement may not be assigned by EMPLOYEE. EMPLOYEE expressly acknowledges that the provisions of paragraphs 6, 7, 8, 9 and 11 of this Agreement are intended to be enforceable by any such successors and assigns as well as by any entity affiliated with the FIRM. In the event the EMPLOYEE is transferred to another location or assigned to a current or future subsidiary or separate business unit affiliated with the FIRM, this Agreement shall remain in full force and effect and binding upon EMPLOYEE.

**13. Waiver of Breach.** The waiver of the FIRM of a breach of any provision of this Agreement by the EMPLOYEE, or a breach of any provisions in similar agreements between the FIRM and any other employee, shall not operate or be construed as a waiver of any subsequent breach by the EMPLOYEE.

**14. Invalidity of Provisions.** If any covenant or part thereof, or other provision of this Agreement is invalid, illegal or incapable of being enforced, by reason of any rule of law or public policy, all other conditions and provisions of this Agreement shall, nevertheless, remain in full force and effect, and no covenant or provision shall be deemed dependent upon any covenant or provision unless so expressed herein. If, moreover, any provision of this Agreement shall for any reason be held to be excessively broad as to time, geographical scope, activity or subject, it shall be deemed amended to the extent necessary for such provision to be held valid and enforceable:



**15. Reasonable and Necessary Restrictions.** The EMPLOYEE agrees that the covenants and restrictions contained in this Agreement are both reasonable and necessary.

**16. Entire Agreement.** This instrument contains the entire agreement of the parties on the matters contained herein. This Agreement may not be waived, changed or modified orally but only in writing by an amendment hereto signed by the parties.

**17. Survival.** It is mutually agreed that the terms of this Agreement shall remain in full force and effect regardless of any changes that may subsequently occur in the EMPLOYEE's remuneration, location, title, duties and/or scope of responsibility. The provisions of paragraphs 6, 7, 8, 9 and 11 shall survive the termination of this Agreement. The EMPLOYEE agrees that, following the EMPLOYEE's termination of employment from the FIRM, the FIRM, in its discretion, may notify any subsequent employer or prospective employer of the EMPLOYEE of the terms and obligations of this Agreement.

**18. Voluntary Agreement/No Inducements.** The EMPLOYEE hereby acknowledges and represents that the EMPLOYEE (a) has fully and carefully read this Agreement prior to signing it; (b) has been, or has had the opportunity to be, advised by independent legal counsel of his/her own choice as to the legal effect and meaning of each of the terms and conditions of this Agreement; and (c) is signing and entering into this Agreement as a free and voluntary act without duress or undue pressure or influence of any kind or nature whatsoever and has not relied on any promises, representations or warranties regarding the subject matter hereof other than as set forth in this Agreement.

IN WITNESS WHEREOF, the parties have executed this AGREEMENT effective on the date first set forth above.

FIRM:    Kforce Inc.

By: _____
        Douglas Rich, VP Human Resources

EMPLOYEE:    Cody Cox

_____
        (signature)

_____
        (printed name)

_____
        Date        12/10/09

Location Code: 4358 - Austin